In the Matter of the Guardianship of the Estate of KAA OLGA HENRY, a Distracted Person

NO. 7369

G. NO. 586

OCTOBER 16, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

This appeal arises out of the Guardian's final accounts after the Ward's death. The Domiciliary Administrator and the Ward's parents (who are her sole heirs) appeal the amount of fees awarded to the Guardian's attorney.

We hold that we are without jurisdiction to hear this appeal because it is premature. However, we will discuss some of the issues which the lower court must address on remand.

In Guardianship No. 586, by order dated January 21, 1975, Charles F. Fell, Esquire, was appointed Guardian of the Ward's estate. The Ward's only asset was a personal injury claim for which the eventual gross settlement was $97,000.00. She died on May 8, 1976. Although at the time of her death there was some question as

to the location of her domicile, her father, Ray Henry, commenced probate proceedings in Washington State and was issued Letters of Administration by the King County Superior Court on September 22, 1976.

On April 7, 1977, in Probate No. 38959, the Guardian filed a Petition for Appointment of Ancillary Administrator in which he noted "[t]hat the attorney for the Administrator, RAY HENRY, has denied that ancillary administration is necessary." On May 2, 1977, the Domiciliary Administrator and the Ward's parents filed a response asking that the petition be denied.

On April 21, 1977, in G. No. 586, the Guardian filed a petition for approval of final accounts, showing $49,148.95 in cash, seven unpaid claims, and asking for costs, authority to pay the unpaid claims, $1,300.00 attorney's fees, and statutory Guardian's fees. The Domiciliary Administrator and the Ward's parents filed a response pointing out errors in the accounts.

On May 26, 1977, in P. No. 38959, the State of Hawaii filed a document asking the court to grant the Guardian's petition for ancillary administration and noting the State's claim against the Ward's estate for Medicaid expenses in the amount of $7,526.40.

On June 3, 1977, in G. No. 586, the Guardian filed a first amended petition, showing $50,673.16 in cash, seven unpaid claims (the State's claim was not included), and asking for costs, authority to pay three of the unpaid claims, attorney's fees of $3,690.96, and Guardian's fees of $1,500.00. On the same day, in P. No. 38959, the Domiciliary Administrator and the Ward's parents orally stipulated that, notwithstanding the Ward's death, the Guardian had the authority subject to their approval to deal with the known Hawaii creditors to compromise or litigate claims with them.

On November 4, 1977, in G. No. 586, the court approved a stipulation among the Guardian, the Domiciliary Administrator, and the Ward's parents authorizing the Guardian to pay the Ward's funeral costs from the guardianship account.

On December 1, 1977, in G. No. 586, the Guardian filed a second amended petition, showing $47,855.97 in cash, and asking for costs, attorneys fees of $4,043.00, and Guardian's fees of $1,288.16. Nothing was stated in this petition about unpaid claims. On March 13, 1978, the probate court filed an order approving final accounts and authorizing distribution of remaining assets to the Domiciliary

Administrator in which it, *inter alia,* authorized and directed the Guardian (1) to pay the State of Hawaii $3,763.20 to satisfy the State's claims for payments made to or for the benefit of the Ward pursuant to chapter 346, Hawaii Revised Statutes (1968), and (2) to retain, pending further order of the court, $8,000.00 to cover "all anticipated fees, expenses and/or costs which are justly payable out of the guardianship estate. . . ."

On April 14, 1978, the probate court denied the Petition for Appointment of Ancillary Administrator.

On December 22, 1978, the probate court filed an order authorizing and directing the Guardian to pay his attorney $4,101.80 for fees and costs. The Domiciliary Administrator and the Ward's parents appeal this order. The probate court did not order the distribution of the remaining $3,898.20 which the Guardian continues to hold pending further order of the court.

The Guardian argues that the appeal is premature. We agree. The appellants argue that the probate court's award of attorney's fees is appealable as a final order or as a collateral order. We disagree.

Generally, a judgment, order, or decree is not final and appealable unless it completely adjudicates all the claims or rights and liabilities of all the parties. *Sturkie v. Han,* 2 Haw. App. 140, 627 P.2d 296 (1981). Orders defined as "collateral" are exceptions to the rule.[1]

*Cohen v. Beneficial Loan Corp.,* 337 U.S. 541 (1949), defines collateral orders as "that small class which finally determines claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546.

In our view, the collateral order doctrine applies to a very small exceptional class of orders.[2] The critical questions are: (1) Is the

---

[1] *See* 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: *Jurisdiction* § 3911 (1976).

[2] We understand the bar's quandry. There being no rule against filing too many notices of appeal, we suggest that the party who desires to appeal the order should (1) act as if the order is an appealable collateral order until it is ruled otherwise; (2) obtain

claim separable from and collateral to the main cause or causes of action? (2) Does the order finally determine the collateral claim? (3) Is the order too important to be denied review? (4) Is the order too independent of the main cause or causes of action to require that appellate consideration be deferred until the whole case is adjudicated?

We do not decide whether requirements 1, 2, and 3 have been satisfied because we hold that requirement 4 has not been satisfied.

In this case the cause is the guardianship. The appeal contests fees awarded to the Guardian for services by his attorney. We are not in a position to review an award of attorney's fees until the completion of the services. Here, the services have not been completed because the cause is not yet completed.[3] We see no reason to allow an appeal of the order awarding attorney's fees prior to a decision on the distribution of the undistributed amount and prior to completion of the attorney's services. Consequently, we hold that the order directing payment of attorney's fees is not an appealable collateral order.

The appellants also contend that the order is actually final because the part of the $8,000.00 that was not awarded as attorney's fees and costs is guaranteed to be distributed to the Domiciliary Administrator. Again we disagree. Appellants misstate the facts. The $8,000.00 was retained "as a reserve fund to cover all anticipated fees, expenses and/or costs which are justly payable out of the guardianship estate. . . ." Thus the $3,898.20 may be paid for those items and not distributed to the Domiciliary Administrator. Moreover, at any time prior to final judgment, the probate court could amend its prior orders and decide to pay the remaining sums as it deems appropriate. There is no guarantee that the probate court will distribute the remaining cash to the Domiciliary Administrator.

---

permission to file an interlocutory appeal under Rule 54(b), Hawaii Rules of Civil Procedure (HRCP) (1954, as amended), or if Rule 54(b) is not applicable, then under Hawaii Revised Statutes (HRS) § 641-1(b) (1976, as amended); and (3) act as if the order is not an appealable collateral order until it is ruled otherwise.

[3] Query whether the lower court had discretion to permit an interlocutory appeal of the order, *Lui v. City and County of Honolulu*, 63 Haw. 668, 634 P.2d 595 (1981). Does *Lui* apply to Rule 54(b), HRCP, situations as well as to HRS § 641-1(b) situations? situations?

In an effort to aid the lower court in deciding this case upon remand, we will generally discuss the substantive issues raised on appeal.

First, according to the affidavits of the Guardian's attorney, a portion of his fee was being charged for "[d]rafting and preparation of . . . final accounts (amended)" and for his associate's work on the "accounts."

The issue is whether the attorney is charging fees for work that the Guardian was required to do and for which the Guardian was paid. If so, that portion of the bill may not be paid from guardianship funds. *Estate of THZ Fo Farm,* 37 Haw. 447 (1947); *Estate of Mary E. Foster,* 34 Haw. 417 (1937); *Estate of A. Enos,* 18 Haw. 542 (1908). This issue should be resolved by the lower court upon remand.

Second, an undefined portion of the Guardian's attorney's fees appears to have involved the attorney's and the attorney's associate's work in pursuing the Guardian's Petition for Appointment of Ancillary Administrator which the appellants opposed.

Attorney's fees awarded by the court must be reasonable and reasonably and necessarily incurred by the party seeking the award. *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978). Thus, the issue is whether the Guardian reasonably and necessarily filed and pursued its petition for ancillary administration. If not, that portion of the bill may not be paid from guardianship funds.

We have difficulty understanding why the Guardian sought ancillary administration. Our difficulty is increased by the fact that he did it in the face of opposition by the appellants. Since the only asset of the deceased was already in the Guardian's hands, the only effect of an ancillary administration would be to give creditors of the decedent's estate an opportunity to make their claims in Hawaii. We question, but do not decide, how such a result can be classified as reasonable and necessary to the guardianship estate's interests.

In his answering brief, the Guardian claims that "[t]he property of the decedent in the state constituted a trust fund for creditors located in the State of Hawaii. The proceedings were beneficial, because it resolved the matter of said creditors and then permitted the distribution of the assets to the appellants." However, the Guardian cites no authority in support of his "trust fund" theory and we have not found any either.

The appeal is dismissed for lack of jurisdiction.

534

*Conrad M. Weiser (Goodsill, Anderson & Quinn* of counsel) for appellants.
*Alana W. Lau* for appellee.