KUKUI NUTS OF HAWAII, INC., Plaintiff-Appellant,

*v.*

R. BAIRD & CO., INC.; DESIGN CREATIONS, INC.; LIVEN & CO. (HAWAII); ARAKAWAS OF WAIPAHU, LTD.; N. KAMURI, LTD., dba RITZ DEPARTMENT STORES; and POMARE, LTD., Defendants-Appellees,

and

BLAIR LTD.; ALLAN CHING aka ALLEN CHING; MNS, LTD. dba ABC STORES; WALTAH CLARKE HAWAIIAN SHOPS, INC.; WDC VENTURE, a Hawaii general partnership, dba INTERNATIONAL MARKET PLACE and HARRY NEWHART; ISLAND CAMERA & GIFT SHOPS, INC; ALIE A. HUSSEIN dba ALI BABA IMPORTS; BUSTER J. WEBB dba PAUL'S IMPORTS; BETTY WONG dba BETTY'S IMPORT & EXPORT; PONG LAI CORAL DEVELOPMENT CO. LTD.; F. W. WOOLWORTH CO., INC., a New York corporation doing business in the State of Hawaii; WATUMULL BROTHERS, LTD., a Hawaii corporation; MR. SU HYOUNG YI dba H. S. JEWELRY aka S. M. JEWELRY dba Cart 22 & Cart 15; MRS. YOUNG JA CHUNG dba J. & J. GIFT SHOP dba Cart 147; MRS. JUNG JIN YOON dba YOON'S GIFTS dba Cart 207; MR. WEN HO CHANG and MR. DAN HSIN CHANG dba MOO JUNG & COMPANY aka MY JEWELRY dba Cart 412; MR. BONG NAE & MS. THERESA OH dba GEMMA GIFT SHOP dba Cart 570; MR. YONG BAE & MRS. KAE SUK KIM dba ALOHA GIFT SHOP I, II & III dba Cart 909, 940 & 985; MR. FRANK NOH dba F. M. GIFT SHOP; LIVEN & CO. (HAWAII), LTD.; dba Cart 983, MS. LINA YOUNSUK MUN dba SUE'S JEWELRY AND GIFT SHOP dba Cart 60; MRS. YANG SOON PAK dba HIBISCUS VILLAGE-A aka BEE'S GIFT SHOP; MR. HWA TAEK PARK aka MICHAEL dba PARKOH II & IV; MRS. MYUNG WON TAPANG and MS. SUNG JA LEE dba HELEN'S GIFT SHOP I, II, III & IV; MR. YUEN PUY CAM dba GOLD CART; MS. JUNE SHINN dba MOONLITE SHOP aka MOONLIGHT

SHOP; MS. KYONG HUI KIM & MR. HAENG I KIM dba BEE'S GIFT SHOP aka NAHENAHE; MRS. YOUNG HEE LEE dba HAWAIIAN PANORAMA; MRS. LORRAINE JHUN dba RAINBOW GIFT SHOP dba Cart 81; MS. JUNG JA KOO dba Cart 100; MS. JEANIE PARK dba HULA GIFT CART dba Cart 149; MRS. JONG HWAN KIM dba SUSAN'S dba Cart 937; MR. JOSEPH SANG KUK PAK dba JONG'S GIFT SHOP dba Cart 970; MRS. KE SOON PARK dba GOLD CABIN; MRS. POK HUI WILDRICK aka POKI dba ALOHA THINGS; MS. ELLIE YANG & MS. IL HAWAN YANG dba JANE'S GIFT SHOP, and APRIL FAIR, INC.; JOHN DOES 13-20; JANE DOES 19-20, DOE CORPORATIONS 4-30; DOE NONPROFIT CORPORATIONS 1-20; DOE PARTNER-SHIPS 1-20 and DOE UNINCORPORATED ASSOCIA-TIONS 1-20, Defendants,

and

BLAIR, LTD., Defendant and Third-Party Plaintiff,

*v.*

ALIE A. HUSSEIN dba ALI BABA IMPORTS, and dba ALI BABA IMPORT, and dba ALI BABA IMPORT & EXPORT; BETTY WONG dba BETTY'S IMPORT & EXPORT; BET-TY'S IMPORT & ASSOCIATES, INC.; BUSTER J. WEBB dba PAUL'S IMPORTS; and PONG LAI CORAL DEVELOP-MENT, CO., LTD., a Hawaii corporation, Third-Party Defen-dants

NO. 12782

600

(CIVIL NO. 84-0632)

March 30, 1990

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Plaintiff-Appellant Kukui Nuts of Hawaii, Inc. (Plaintiff), appeals from the summary judgments below in favor of Defendants-Appellees Arakawa's of Waipahu, Ltd. (Arakawa's), N. Kamuri, Ltd., dba Ritz Department Stores (Kamuri), Pomare, Ltd. (Pomare),[1] R. Baird & Co., Inc. (Baird), Design Creations, Inc. (Design), and Liven & Co. (Hawaii) (Liven).[2]

---

[1] Where appropriate in the opinion, Arakawa's, Kamuri, and Pomare will be referred to collectively as Retailers.

[2] Where appropriate in the opinion, Baird, Design and Liven will be referred to collectively as Wholesalers, and all Defendants-Appellees will be referred to collectively as Defendants.

The dispositive issues[3] and our answers are as follows:

(1) Whether the lower court erred in granting summary judgments to Defendants. Yes.

(2) Whether the lower court abused its discretion in granting a number of orders relating to Plaintiff's alleged discovery abuses. Yes as to some orders and no as to others as discussed below.

We reverse the summary judgments, affirm part of the award of attorney's fees and costs to Baird as a sanction for Plaintiff's discovery abuses, vacate the balance of the award of attorney's fees and costs to Baird, vacate all of the awards of attorney's fees and costs to Design and Liven, and remand for further proceedings consistent with this opinion.

## FACTS

For several years Plaintiff sold and distributed leis and other "jewelry" items made from kukui nuts grown in Hawaii.[4] Plaintiff's business was quite successful for a time but began to decline after 1980. In May 1984 Plaintiff filed a chapter 11 bankruptcy petition. Based on its belief that its business decline was caused by Defen-

---

[3] Plaintiff also appealed on the grounds that (1) the December 21, 1984 denial of its motions for preliminary injunction and supplemental preliminary injunction was error and (2) the lower court abused its discretion in denying Plaintiff's February 25, 1985 motion to amend and supplement the complaint and in denying in part its May 28, 1987 motion to amend the complaint. Since Plaintiff has not presented any argument regarding the first ground, we will not consider it. *Berkness v. Hawaiian Elec. Co.*, 51 Haw. 437, 462 P.2d 196 (1969). Moreover, the question of injunctive relief in this case is now moot. *See* note 17, *infra.* In view of our decision to remand the case for further proceedings, we do not discuss the second ground.

[4] The kukui nut is the nut of the candlenut tree, which is described as:

Candlenut tree (Aleurites moluccana), a large tree in the spurge family bearing nuts containing white, oily kernels which were formerly used for lights; hence the tree is the symbol for enlightenment. The nuts are still cooked for a relish ('inamona). The soft wood was used for canoes, and gum from the bark for painting tapa; black dye was obtained from nut coats and from roots. . . . Polished nuts are strung in leis[.]

M. Pukui and S. Elbert, *Hawaiian Dictionary* 177-78 (1985).

dants' selling of products similar to its kukui nut products but imported from Taiwan, Plaintiff filed the 22-count complaint in this action on September 13, 1984.

The complaint alleged that Plaintiff had spent considerable money and effort developing the market for genuine Hawaiian kukui nut products and had built its operation into a successful enterprise; that from 1980 on Defendants sold as "genuine" kukui nut products, merchandise made from "tung" nuts grown in and imported from Taiwan; that the labels Defendants attached to their products misrepresented those products as being "Hawaiian" and "kukui nuts;" and that the labels "rarely" indicated that Defendants' products were imported or that they are not made from kukui nuts.[5]

The complaint charged that Defendants' actions "misrepresent[ed] the composition or ingredients of their products and misrepresent[ed] or fail[ed] to represent their correct geographic origin", and were unfair methods of competition or unfair or deceptive trade practices in violation of Hawaii Revised Statutes (HRS)

---

[5] Since filing the complaint, Plaintiff has wavered considerably as to whether Defendants' products were actually kukui nuts. In the complaint, Plaintiff alleged that the nuts were "tung" nuts grown in Taiwan. Subsequently, Plaintiff moved to amend the complaint to allege merely that the nuts were "grown outside of Hawaii and processed in Taiwan." The motion to amend the complaint was denied. In a memorandum opposing Baird's motion for summary judgment, filed on September 18, 1985, Plaintiff stated that the "jewelry in question is manufactured in Taiwan and is made from a certain type of candlenut which grows in the Philippines." An affidavit of Beatrice Krauss, an ethnobotanist, attached to the memorandum indicates that the Philippine nut, the lumbang nut, is the same genus and species as the kukui nut.

At oral argument Plaintiff's counsel stated that Plaintiff does not seek to prevent Defendants from importing and selling their foreign-grown nuts, but only to require Defendants to ensure that their products bear a label prominently stating that they are made from foreign nuts. We deem Plaintiff to have abandoned its contention that Defendants' nuts cannot be called kukui nuts.

§ 480-2 (1985),[6] and a number of criminal statutes.[7] The complaint further alleged that, as a result of Defendants' actions, Plaintiff suffered severe monetary losses. The complaint sought injunctive relief, general and punitive damages, treble damages under HRS § 480-13,[8] interest, attorney's fees, and costs.

---

[6] Hawaii Revised Statutes (HRS) § 480-2 (1985) provides that, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

HRS § 480-2 was amended by Act 274, 1987 Haw. Sess. Laws, and Act 51, 1988 Haw. Sess. Laws, and presently reads as follows:

§ 480-2 **Unfair competition, practices, declared unlawful.** (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

(b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(l) of the Federal Trade Commission Act (15 U.S.C. 45(a)(l)), as from time to time amended.

(c) No showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary in any action brought under this section.

(d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

Subparagraph (d) was added by Act 274, *supra*. Legislative history indicates the legislature did not intend Act 274 to apply retroactively. In passing House Bill 1525, which became Act 274, the house of representatives stated that its intent was that the legislation would not affect any rights and duties that had matured prior to the legislation's effective date. Hse. Stand. Comm. Rep. No. 575, in 1987 House Journal, at 1371. The senate added a retroactivity provision. Sen. Stand. Comm. Rep. No. 1056, in 1987 Senate Journal, at 1345. However, the retroactivity provision was deleted from the final form of House Bill 1525. Consequently, subparagraph (d) does not affect Plaintiff's cause of action here.

[7] The criminal statutes cited in the complaint are HRS §§ 708-871 (prohibiting false advertising); 705-520 (conspiracy); 705-500 and -501 (attempting to commit and attempting to aid others to commit a criminal act); and 702-221, -222, and -223 (liability as accomplices).

[8] HRS § 480-13 (1985) reads in pertinent part as follows:

§ 480-13 **Suits by persons injured; amount of recovery, injunctions.** (a) Any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter:

(1) May sue for damages sustained by the person, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys fees together with the cost of suit;

Arakawa's, Kamuri, and Pomare filed separate motions for summary judgment. On January 24, 1985, the court entered separate summary judgments in their favor, without stating its reasons. The court denied Plaintiff's motion for reconsideration on March 5, 1985.

On August 28, 1985, and September 9, 1985, Baird and Design, respectively, filed motions for summary judgment or for dismissal based on Plaintiff's alleged discovery abuses. On October 18, 1985, the court entered summary judgment in favor of Wholesalers on the ground that Plaintiff had failed to establish that kukui nuts had acquired a "secondary meaning."[9]

---

provided that no showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary when the party against whom the proceeding or suit is brought is a merchant as that term is defined in chapter 490; and

    (2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorneys fees together with the cost of suit.

    (b) The remedies provided in this section are cumulative and may be sought in one action.

HRS § 480-13 was also amended by Act 274, 1987 Haw. Sess. Laws, *supra*. Subparagraph (a) presently reads as follows:

§ 480-13 **Suits by persons injured; amount of recovery, injunctions.** (a) Except as provided in subsections (b) and (c), any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter:

    (1) May sue for damages sustained by the person, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys fees together with the costs of suit; provided that indirect purchasers injured by an illegal overcharge shall recover only compensatory damages, and reasonable attorneys fees together with the costs of suit; and

    (2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorneys fees together with the cost of suit.

Act 274 also relettered subparagraph (b) as (d), and added a new subparagraph (b). The new subparagraph (b) limits a consumer to an action for unfair or deceptive practices forbidden or declared unlawful by HRS § 480-2, rather than by chapter 480 as a whole.

[9] Wholesalers' motions were heard on September 20, 1985. At the hearing Liven, which was named as a defendant on August 15, 1985, and served with the complaint and summons on August 20, 1985, orally joined in Baird's and Design's motions.

On October 7, 1987, Plaintiff filed a notice of appeal, but on October 14, 1987, presumably to effect finality of the summary judgments, filed a motion to dismiss without prejudice all unresolved claims, except the claims against Defendants. Also on October 14, 1987, a judgment for attorney's fees was entered in favor of Liven.[10] On November 5, 1987, Plaintiff filed another notice of appeal. On November 17, 1987, Plaintiff's October 14, 1987 motion was granted. However, on December 10, 1987, stipulations were filed partially dismissing Plaintiff's claims against defendant Alie A. Hussein, dba Ali Baba Imports, dba Alie Baba Import and dba Ali Baba Import and Export, with prejudice, and against de-

---

Although the October 18, 1985 judgment noted Liven's oral joinder, it did not specify that the judgment was also in Liven's favor. Plaintiff subsequently took the position that Liven had not been awarded summary judgment. See footnote 10, *infra*. Consequently, on April 2, 1987, Liven filed a motion for a *nunc pro tunc* order for summary judgment, which was granted on June 4, 1987, effective on October 18, 1985.

Liven submitted no evidence in support of its oral motion at the September 20, 1985 hearing, and its April 2, 1987 motion for judgment *nunc pro tunc* was based solely on its oral joinder in Baird's and Design's motions. Without evidence showing that it was entitled to summary judgment as a matter of law because there was no issue of fact as to its actions, summary judgment in its favor was improper. See Rule 56(c), Hawaii Rules of Civil Procedure (HRCP) (1980).

On appeal Liven also argues that dismissal of the complaint can be sustained on the grounds of Plaintiff's discovery abuses. However, the order did not dismiss the complaint as a sanction for discovery abuses. The court granted summary judgment on the ground Plaintiff had "failed to present evidence that 'kukui nuts' has acquired a secondary meaning[.]" Moreover, a dismissal under Rule 37 requires a finding of willfulness, bad faith, or fault on the part of the non-complying party. *See Hindmon v. National-Ben Franklin Life Ins. Corp.*, 677 F.2d 617 (7th Cir. 1982). There is no such finding in this case. Consequently, the dismissal cannot be affirmed on Rule 37 grounds.

[10] On May 28, 1987, Plaintiff filed a motion to amend the complaint. The motion was granted in part only, and Plaintiff was allowed to amend the complaint only as to those defendants not previously dismissed. Since Plaintiff believed that Liven had not been awarded summary judgment along with Baird and Design, Plaintiff named Liven as a defendant in the amended complaint. On June 26, 1987, Liven, having obtained its June 4, 1987 *nunc pro tunc* summary judgment, but having been named in the amended complaint as a defendant, filed a motion to dismiss. Liven's motion to dismiss was granted, and it filed a motion for attorney's fees, claiming the amended complaint against it was frivolous. Liven's motion was granted and the October 14, 1987 judgment was entered. Plaintiff has not assigned the October 14, 1987 judgment as error. However, as we noted in footnote 9, *supra*, Liven was not entitled to summary judgment or dismissal on this record. Consequently, the October 14, 1987 judgment for attorney's fees was also error.

fendant April Fair, Inc., without prejudice.[11] On January 25, 1988, Plaintiff filed another notice of appeal. At that time all claims of all parties had been disposed of and the case was appealable.[12]

## THE SUMMARY JUDGMENTS

The thrust of Wholesalers' summary judgment motions and the attached exhibits was that (1) the term kukui nuts does not have a secondary meaning which would cause a prospective purchaser to think a product described as such is Plaintiff's product; and (2) they have always sold their products with labels attached stating the products are made in Taiwan.[13] The Retailers asserted in their motions that they (1) were not in competition with Plaintiff; (2) did not remove the labels placed on the kukui nut products by Wholesalers; and (3) had no duty to inspect the products they received from Wholesalers to ensure that the labels were attached.

The record indicates that Plaintiff's attempts to counter Defendants' motions were woefully inadequate, and Plaintiff failed to establish a genuine issue of material fact regarding the issues raised below by Defendants.[14] Nevertheless, it is our view that summary judgment was improvidently granted.

---

[11] The stipulation notes that the above defendants are the only "non-defaulted parties remaining" in the action.

[12] Retailers challenge appellate jurisdiction on the grounds that not all claims have been disposed of, since the December 10, 1987 stipulation to dismiss the claim against April Fair, Inc., was set aside by a further stipulation approved by the court and entered on February 5, 1988. The argument is without merit. When the January 25, 1988 notice of appeal was filed all claims of all parties had been disposed of, and the circuit court had no jurisdiction to approve the February 5, 1988 stipulation. *Tropic Builders v. Naval Ammunition Depot Lualualei Quarters, Inc.*, 48 Haw. 306, 402 P.2d 440 (1965).

[13] Plaintiff argues that Wholesalers' summary judgment is in error both as a summary judgment and as a sanction order. We presume the argument is based on the fact that Wholesalers' motions requested either summary judgment or, in the alternative, dismissal for discovery abuses. However, the court granted summary judgment; it did not dismiss for discovery abuses. *See* footnote 9, *supra.*

[14] For the most part Plaintiff's affidavits stated hearsay, or conclusions of the affiant. The only admissible evidence Plaintiff submitted were:

1. Affidavits from Bunzie Ringer, Plaintiff's president, stating that for five years Plaintiff operated a retail outlet for its products;

Summary judgment should be granted only in cases where the entire record reveals no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Messier v. Ass'n of Apartment Owners of Mt. Terrace,* 6 Haw. App. 525, 735 P.2d 939 (1987).

> Because its impact is rather drastic, summary judgment must be used with due regard for its purposes and should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues.

*McKeague v. Talbert,* 3 Haw. App. 646, 650, 658 P.2d 898, 903 (1983).

> "It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. * * * Burden is upon party [sic] moving for summary judgment to demonstrate clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him."

*State v. Zimring,* 52 Haw. 472, 475, 479 P.2d 202, 204 (1970) (quoting *Phoenix Sav. and Loan, Inc. v. Aetna Casualty and Sur. Co.,* 381 F.2d 245, 249 (4th Cir. 1967) ).

In reviewing a summary judgment, the court must look to the pleadings as well as the documents and affidavits on file, Rule 56(c), Hawaii Rules of Civil Procedure (HRCP) (1980); *see Fernandes v. Tenbruggencate,* 65 Haw. 226, 649 P.2d 1144 (1982), and every case must be decided on its own particular facts. 6 J. Moore and J. Wicker, Moore's Federal Practice ¶ 56.15[1.-0] at 56-210 (2nd ed.

---

2. Portions of the depositions of Alan Ching, whom Plaintiff described as "principal" of Design, and Lester Rouse Baird, who was deposed as a representative of Baird. They testified that their products are imported from Taiwan with labels attached stating that they are made in Taiwan, which they do not remove;

3. Affidavits of one Vern Ramie, a private investigator hired by Plaintiff, who stated that he went to Pomare's and Arakawa's stores in March and September 1984, respectively, and observed that none of the kukui nut products offered for sale there bore any label showing they were made in Taiwan. However, there is nothing to show that the kukui nut products observed by Ramie were not in fact kukui nuts, or were made in Taiwan.

1988). While a party may not rest on his or her pleadings, the pleadings "are very important and are carefully perused" on a summary judgment review. 10A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, *Civil* § 2722 (1983). Pleadings are to be construed liberally, not technically, *Au v. Au,* 63 Haw. 210, 626 P.2d 173 (1981), and the evidence and all inferences must be viewed in the light most favorable to the non-moving party. *Carrington v. Sears, Roebuck and Co.,* 5 Haw. App. 194, 683 P.2d 1220 (1984).

It has been held that, where the complaint alleged more than one ground for imposing liability on the defendant for the plaintiff's injury, and the defendant's summary judgment motion attacked only one ground, summary judgment on the entire claim was unwarranted. *Elder v. Brannan,* 184 F.2d 219 (D.C. Cir. 1950), *aff'd in part, rev'd in part on other grounds,* 341 U.S. 277, 71 S.Ct. 685, 95 L.Ed. 939 (1951).

Therefore, the question here is whether the pleadings and the evidence in the record show that Plaintiff may be entitled to relief on grounds other than its claim that Defendants' products were not kukui nuts and were sold without labels indicating they were of foreign manufacture. We hold they do. We first look to the law of unfair or deceptive trade practices.

HRS § 480-2 (1985) "outlaws unfair methods of competition and unfair or deceptive trade practices in sweeping terms." *Island Tobacco Co. v. R.J. Reynolds Tobacco Co.,* 63 Haw. 289, 300, 627 P.2d 260, 268 (1981). The statute "was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive practices for the protection of both consumers and honest businessmen." *Ai v. Frank Huff Agency, Ltd.,* 61 Haw. 607, 616, 607 P.2d 1304, 1311 (1980) (footnote omitted). HRS chapter 480 must "be construed in accordance with judicial interpretations of similar antitrust federal statutes." HRS § 480-3 (Supp. 1988).

It has been held that selling by the use of false and misleading statements necessarily injures or tends to injure a guilty party's competitors. *E. Griffith Hughes, Inc. v. Federal Trade Comm'n,* 77 F.2d 886 (2nd Cir.), *cert. denied,* 296 U.S. 617, 56 S.Ct. 137, 80 L.Ed. 438 (1935). In this regard the case of *In re Oxwall Tool Co.,* 59 F.T.C. 1408 (1961), instructs us that even though a product may bear a

label noting its foreign manufacture, the size and placement of that label may nevertheless violate the Federal Trade Commission Act.[15] In that case Oxwall Tool Co. (Oxwall) was in the business of selling and distributing hand tools such as wrenches, pliers, and tape measures, primarily to distributors, jobbers, and retailers, for resale to the public. Some of the tools were manufactured in foreign countries and imported by Oxwall. The imported tools bore markings indicating the countries where they were manufactured. The Federal Trade Commission's (F.T.C.) hearing examiner found, however, that in some instances the markings "are so small and indistinct that they do not constitute adequate notice to the public of the country of origin of such tools." *Id.* at 1411. In other instances the hearing examiner found that the foreign tools were packaged or assembled in such a manner as to conceal or obscure the foreign origin mark. The F.T.C. adopted the decision of the hearing examiner that Oxwall's practices had "the capacity and tendency to mislead" purchasers into mistakenly believing that the tools were of domestic origin and to make purchases based on that mistaken belief. The F.T.C. held that Oxwall's actions were prejudicial and injurious to the public and Oxwall's competitors and constituted "unfair acts and practices and unfair methods of competition . . . within the intent and meaning of the Federal Trade Commission Act." *Id.* at 1413. In *Geisel v. Poynter Products, Inc.*, 283 F. Supp. 261 (S.D. N.Y. 1968), it was held that actions of a seller that create a likelihood of confusion as to the source of his goods constitute a deceptive trade practice.

Additionally, HRS § 481A-3(a)(4) (1985) states that it is a deceptive trade practice to use "deceptive representations or designations of geographic origin in connection with goods or services." A trade practice deceptive under HRS chapter 481A cannot escape the condemnation of HRS § 480-2.

> A practice expressly designated an "unfair trade practice" by a part of the law dealing with "fair trade regulations" could

---

[15] Decisions of the Federal Trade Commission may also be used to assist in the construction of HRS chapter 480. Conf. Comm. Rep. No. 23, in 1981 Senate Journal, at 913.

hardly be deemed otherwise for purposes of a closely related law.

*Island Tobacco,* 63 Haw. at 313, 627 P.2d at 276.

The question of whether an unfair or deceptive trade practice exists is a question of fact. *Adolph Coors Co. v. Al Genderson & Sons, Inc.,* 486 F. Supp. 131 (D. Colo. 1980). We turn now to the evidence in the record.

The evidence is undisputed that the foreign manufacturers attach two labels to their kukui nut products. One of the labels, which we will call the descriptive label, is attached to the product by a short length of string; the other label, which we will call the origin label, is either attached by a separate length of string, or is a sticker.

Baird's descriptive label measures approximately 3 inches by 4 inches and is folded in half to approximately 1-1/2 inches by 4 inches. One half of the outside part of Baird's descriptive label bears a picture of coconut trees with Diamond Head in the background. Imprinted over the picture are the words "KUKUI NUTS" in heavy capital letters approximately 3/16 inch in height, and "Symbolic of Hawaii" in letters approximately 1/16 inch in height. The other half contains what appear to be characters from the Japanese language. The inside of Baird's descriptive label contains three short paragraphs bearing the title, "GENUINE KUKUI NUTS" in heavy capital letters approximately 1/8 inch high. The first two paragraphs state that "Kukui Nuts are the fruit of the State Tree of Hawaii," and describe the various uses such as food, oil, and ornamentation, to which ancient Hawaiians put the kukui nut. The last paragraph of the label reads:

> These "Genuine Kukui Nuts" are prized by local residints [sic] and visitors alike. They are a lasting and beautiful symbol of Hawaii.

The letters in the message within Baird's label are approximately 1/16 inch in height.

Design's descriptive label measures 2 inches by 5 inches, folded to 2 inches by 2-1/2 inches. On one half of the outside of Design's label are Japanese characters, and the other half bears the words "KUKUI NUTS" in heavy stylized block letters approximately 1/2 inch high. Half of the inside of Design's descriptive label bears more Japanese characters. The other half contains a description of

how the kukui nuts were worn in ancient times only by Hawaiian royalty, and are still prized and worn today as a reflection of "the love and respect that the Hawaiian people have for old traditions."

Baird's origin label consists of a glossy gold sticker 1/8 inch by 1/2 inch on which is printed "Made in Taiwan Republic of China" in black letters. We cannot tell the size of the letters from the record; however, the origin label's size indicates those letters could not be more than 1/16 inch high. The exhibit in the record shows the sticker is attached to Baird's descriptive label in a corner of the picture of the coconut trees and Diamond Head.

Design's origin label measures 3/8 inch by 3/4 inch and bears on one side the words "MADE IN TAIWAN" in letters less than 1/16 inch high. The other side contains the abbreviation "No.", and a dollar sign. The abbreviation's letters are markedly larger than those reading "MADE IN TAIWAN." Design's origin label is attached by a short length of string. Both origin labels appear to be easily removable.

It is clear from Baird's and Design's descriptive labels that they are intended to persuade buyers, tourists in particular, to buy Defendants' products because they are made from the culturally and historically significant kukui nut.[16] Without more, the descriptive labels would clearly lead a purchaser to believe that the products were made in Hawaii from a nut grown in Hawaii. The question is whether the origin labels are sufficient to overcome that miscon-

---

[16] In support of its right to describe its products as kukui nuts, Baird argues in its answering brief:

> Since the items in question are souvenirs, the identification with Hawaii and Hawaiian culture are what give value to the products. The "use" of a souvenir is to remind the purchaser of Hawaii. It is essential, in order for such a product to serve its function, that the nuts be called "kukui nuts" and their use in Hawaiian culture explained. It would make no sense to require BLAIR and other Defendants-Appellees to sell, as souvenirs of Hawaii, "lumbang nuts leis" with a brochure explaining the use of the lumbang nuts in the Philippines. Such items would not be salable as souvenirs of Hawaii because something essential to the function of a souvenir would have been lost: identification with the place of purchase. It is clear that the words "kukui nuts" and the identification of the products with Hawaii are essential and functional and should not be protected[.]

(Footnote omitted.)

ception, bearing in mind their size, placement, and ease of removability.[17] That question is a genuine issue of material fact.

Baird contends that Plaintiff did not produce any evidence to counter Baird's assertion in its motion for summary judgement that

---

[17] The record shows that on October 31, 1986, the United States International Trade Commission issued a cease and desist order against Baird and Liven, and other defendants in the proceedings below who are not parties to this appeal, stemming from a complaint filed by Plaintiff on September 16, 1985. The order required the following, *inter alia:*

    1. Respondent will not in the United States represent, or aid or encourage other persons to represent, explicitly or by implication, orally or in sales, advertising or promotional material for imported nut jewelry, that such jewelry was manufactured, processed, or strung in Hawaii or that the nuts were grown, manufactured, processed, or produced in Hawaii.

    2. Respondent will not in the United States market, distribute, sell, or offer for sale any imported nut jewelry unless an appropriate printed label is attached thereto:

(A) the label, to the extent reasonably possible, shall be designed, made, and attached in a manner to inhibit any person except the ultimate purchaser in the United States from destroying, removing, altering, covering, or obliterating the label or its contents;

(B) the label shall state, legibly, permanently, and conspicuously, the English language name of the country of origin in type size not smaller than the size of the largest type size appearing on the label;

(C) if the label contains the words "United States," "American," "Hawaii," "Hawaiian," the letters "U.S.A.," or any variation of such words or letters, or the name of any other city or locality in the United States, or the words "genuine," "authentic," or "guaranteed," or words of similar meaning, then the country of origin marking must be in close proximity to such words, letters, or names, and in at least a comparable type size to such words, letters or names:

(D) the label shall state in close proximity to the required country of origin marking and in at least the same type size: "Removal of this disclosure of foreign origin prior to final sale may be punishable by law under 19 U.S.C. § 1304(e)"; and

(E) the label shall not bear any representation, including any depiction, symbol, characteristic feature, or scene of the State of Hawaii, such that the label suggests the nuts are grown or processed in the State of Hawaii, or that the nuts or jewelry were processed, strung, or manufactured in the State of Hawaii.

    3. Respondent shall not remove, or aid or encourage others to remove, the label required by paragraph 2 of this Order.

    4. This Order is effective with respect to all imported nut jewelry whenever imported.

Plaintiff argues that the order renders the Wholesalers' summary judgment "erroneously reversible", as if the order has retroactive effect. Plaintiff has not directed us to any authorities in support of its argument and we will assume there

Defendants' actions did not cause any injury to Plaintiff.[18] Baird attached as an exhibit to its motion Plaintiff's bankruptcy petition with its disclosure statement, where Plaintiff stated that the "necessity for seeking protection under Chapter 11 arose primarily as a result of the collection methods of the Internal Revenue Service." Baird contends that Plaintiff's statement is an admission that Defendants did not cause Plaintiff's losses. The argument is specious.

The disclosure also contains the following statements imputing Plaintiff's business losses to Defendants' imported products:

> The company . . . had its most profitable year ever in 1980 - 1981. However, starting in late 1980, the Hawaii kukui nut jewelry and lei business started to decline due to imports of tung nut jewelry and leis from Taiwan. These tung nuts have been improperly labeled as kukui nuts and sold as the same, even here in Hawaii.
>
> From 1980 until early 1984, the loss of a substantial portion of the kukui nut jewelry business caused the operations of KNH to go from highly profitable to significantly in the red.
>
> As mentioned above, from 1980 to early 1984, the kukui nut jewelry business has suffered due to imports of tung nut jewelry and mislabeling of the same even in the Hawaii market.

Viewing the statement cited by Baird most favorably for Plaintiff, and in the context of the entire disclosure statement, we think there is a genuine issue of material fact as to the cause of Plaintiff's business losses. The statement regarding the Internal Revenue Service is merely Plaintiff's reason for seeking bankruptcy protec-

---

are none. See *Ala Moana Boat Owners' Ass'n v. State*, 50 Haw. 156, 434 P.2d 516 (1967). Moreover, in view of our decision that there is a genuine issue of fact whether there is an unfair or deceptive trade practice alleged in the complaint we do not decide the retroactivity issue. Baird argues against retroactivity, but contends that the order renders the injunction issue moot. We agree that the cease and desist order renders the injunction question moot, not only as to Baird and Design but, apparently as to Liven which, according to the record of the commission proceedings, entered into a consent order terminating the proceeding as to it. However, the question as to Plaintiff's damages, if any, or its right to attorney's fees, is not moot.

[18] In its opening brief Design adopted Baird's arguments on appeal as its own.

tion. It is not the reason cited by Plaintiff for its alleged financial losses.[19]

 Retailers argue that their summary judgment was proper since they had no contractual relationship with Plaintiff, and as competitors they had no duty to prevent injury to Plaintiff. However, HRS § 480-2 creates such a duty. *See Island Tobacco Co. v. R.J. Reynolds Tobacco Co., supra; Beerman v. Toro Mfg.,* 1 Haw. App. 111, 615 P.2d 749 (1980). They also contend that the origin labels are attached by the manufacturer and they have no duty to inspect the product to see that the label conforms to the law. In essence, they argue that they are merely innocent conduits and are not liable for the Wholesalers' labeling practice. However, innocence of motive does not relieve one of the duty to conform to the law. *See Federal Trade Comm'n v. Algoma Lumber Co.,* 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655 (1934).

> Competition may be unfair within the meaning of [the Federal Trade Commission Act], though the practice condemned does not amount to fraud as understood in courts of law. Indeed, there is a kind of fraud, as courts of equity have long perceived, in clinging to a benefit which is the product of misrepresentation, however innocently made.

*Id.* at 81, 54 S.Ct. at 321, 78 L.Ed. at 664.

As we have noted, the complaint alleged that Defendants employed unfair methods of competition by "misrepresenting the composition or ingredients of their products and misrepresenting or failing to represent their correct geographic origin," in violation of HRS § 480-2. Those allegations without doubt make out an unfair or deceptive trade practice claim under HRS § 480-2, and, in our view, are sufficient to raise the question of the adequacy of Defendants' notice of foreign manufacture. Plaintiff has a right to have the issue determined.

---

[19] Baird also contends that Plaintiff's claim is barred by the doctrine of laches and unclean hands. However, those defenses apply only to Plaintiff's right to injunction. Since we hold that that question is moot, see footnote 17, *supra,* the argument is without merit.

## SANCTIONS

### A.

*Appellate Jurisdiction*

We note, first, that Baird argues that, since the sanction orders are independently appealable collateral orders, Plaintiff was required to appeal them within thirty days of their entry. Since Plaintiff did not do so, Baird contends they are not reviewable in this appeal. We disagree.

The authorities are split on the question whether a collateral order, not previously appealed, is reviewable on appeal from the final judgment in the case. 5 Am. Jur. 2d *Appeal and Error* § 857 (1962). The question has not been decided in this jurisdiction. *See In Re Estate of Henry*, 2 Haw. App. 529, 531 n.2, 634 P.2d 615, 618 n.2 (1981).

We agree with the statement that:

> If it is possible to provide an effective remedy on appeal from the final judgment, however, review should be allowed. . . . Any rule that requires forfeiture of appellate opportunities for guessing wrong about an unclear rule would greatly increase the costs of the collateral order doctrine by forcing protective appeals in many situations of doubtful appealability. Forfeiture, moreover, would trap some parties in a box framed by a rule designed to alleviate untoward risks, not to create them. The system can live easily with a double opportunity for appeal.

15 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure, *Jurisdiction* § 3911, at 498-99 (1976).

Thus, we hold that, where relief can be afforded from the terms of a collateral order upon appeal from the final judgment, the collateral order may be reviewed at that time, and the right to appeal the collateral order is not forfeited because it was not appealed from when it was entered. *Schwarz v. Folloder*, 767 F.2d 125, 129 n.4 (5th Cir. 1985); *Kenyatta v. Moore*, 744 F.2d 1179, 1186-87 (5th Cir. 1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2141, 85 L.Ed.2d 498 (1985).

Relief from the sanction orders in this case can be afforded in this appeal. Consequently, we have jurisdiction to review them.

B.

*Order To Compel Discovery*

Plaintiff's motion for preliminary injunction was scheduled for hearing on December 17, 1984. The circuit court's minute order following an October 25, 1984 pre-hearing conference before Judge Philip T. Chun indicates that (1) discovery was to be completed and motions to compel discovery were to be filed by November 30, 1984; (2) interrogatories were to be transmitted by November 5, 1984, at the latest; and (3) all experts were to be disclosed by November 15, 1984.

On November 28, 1984, Baird filed a motion under Rule 37(a) to compel (Motion To Compel) Plaintiff to make Bunzie Ringer (Ringer), Plaintiff's president, Ringer's wife Emma (Emma), and Plaintiff's investigator Ron Ramie (Ramie) available for deposition, and to make other discovery. After a hearing on December 7, 1984, the Motion To Compel was granted. However, the written order (Compelling Order) was not entered until December 17, 1984, the day of the preliminary injunction hearing. The Compelling Order required Plaintiff to (1) make Ringer, Emma, and Ramie available for deposition prior to the injunction hearing; (2) produce documents and answer deposition questions relating to Plaintiff's manufacturing process, future capital arrangements, and details of Plaintiff's purported purchases of Baird's kukui nut products, all of which Plaintiff had refused to do; (3) produce for examination or copying all photographs and negatives taken as part of Plaintiff's investigation; and (4) produce other documents and evidence previously requested. Plaintiff's motion to reconsider the December 17, 1984 order was denied in an order entered on February 5, 1985.

Plaintiff attacks the Compelling Order on the grounds that (1) it was untimely; (2) the deposition of Emma was unnecessary and vexatious; and (3) the Compelling Order did not provide protection for Plaintiff's "trade secrets." The arguments are without merit.

## 1.

In support of its argument that the Compelling Order was untimely, Plaintiff relies on the circuit court's October 25, 1984 minute order. The pertinent part of the minute order is the clerk's written notes, which read as follows:

(1) All discovery be complete = 11/30/84
— Mot compel by 11/30/84

Citing printed matter on the minute order form reading, "MOTIONS to be filed and heard by _____", Plaintiff argues that the Motion To Compel should have been filed and the Compelling Order entered prior to November 30, 1984. We disagree.

Had the court intended to require the schedule argued for by Plaintiff it would have been simple enough merely to fill in the blank space in the printed form. In our view the court was aware that the case required considerable discovery, and the parties could not know until late in the discovery period whether or not they would need to file motions to compel discovery. Moreover, it was unrealistic to expect that all discovery disputes could be decided prior to November 30, 1984. The November 30, 1984 deadline afforded the parties sufficient time to complete discovery, or seek the court's assistance if necessary. It also provided time before the December 17, 1984 hearing to decide any discovery disputes.

## 2.

Baird was forced to seek the court's assistance in compelling Emma's testimony because Plaintiff had unilaterally truncated a November 27, 1984 deposition of her, claiming that Emma was suffering from cancer and had no knowledge of Plaintiff's business operations. However, the record does not indicate that either Plaintiff or Emma ever sought a protective order to safeguard her from Defendants' discovery. Rule 26(c)(2), HRCP.[20] Absent a protective

---

[20] Rule 26(c)(2), HRCP, reads as follows:
**GENERAL PROVISIONS GOVERNING DISCOVERY.**

\* \* \*

(c) **Protective Orders.** Upon motion by a party or by the person from whom

order, Plaintiff was not authorized to unilaterally truncate Emma's deposition. *See Pioche Mines Consol., Inc. v. Dolman,* 333 F.2d 257 (9th Cir. 1964), *cert. denied,* 380 U:S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972 (1965). Plaintiff's argument that the Compelling Order should not have included Emma, since Emma's deposition was not mentioned in any of the memoranda relating to the Motion To Compel, or at the hearing on the motion, does not assist it. It was Plaintiff's burden to seek the protection for Emma that it says the court should have provided. If Plaintiff thought Emma needed protection, it should have asked for it.

3.

Citing Rule 508, Hawaii Rules of Evidence (HRE) (1981), Plaintiff argues that the lower court should have disallowed inquiry into Plaintiff's manufacturing processes or its sources of capitalization.[21] The issue is governed by Rule 26(c)(7), HRCP, and not Rule 508, HRE. *See* Commentary to Rule 508, HRE. Rule 26(c)(7), HRCP, authorizes a court to issue an order to protect trade secrets revealed or to be revealed during discovery.[22] The trial court has broad discretion in determining reasonable protective measures for trade secrets. 8 C. Wright and A. Miller, *supra,* § 2043 (1970).

---

discovery is sought, and for good cause shown, the court in which the action is ' pending or alternatively, on matters relating to a deposition, the court in the circuit where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place[.]

[21] Rule 508, Hawaii Rules of Evidence (1981), provides:

**Trade secrets.** A person has a privilege, which may be claimed by him or his agent or employee, to refuse to disclose and to prevent other persons from disclosing a trade secret owned by him, if allowance of the privilege will not tend to conceal fraud or otherwise work injustice. When disclosure is directed, the judge shall take such protective measure as the interests of the holder of the privilege and of the parties and the furtherance of justice may require.

[22] Rule 26(c)(7), HRCP, provides that the court may order, "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way[.]"

Plaintiff has not convinced us on this record that the court abused its discretion in denying Plaintiff's request for protection.

4.

The court did not err in denying Plaintiff's motion to reconsider the Compelling Order since the motion was based on Plaintiff's untimeliness argument.

C.

*The Exclusion Order*

On December 13, 1984, Baird filed (1) a motion to exclude Plaintiff's expert witness, Beatrice Kraus, from testifying at the preliminary injunction hearing, on the ground that her name was not revealed to Baird until December 11, 1984, and (2) a motion to dismiss the complaint or to exclude the testimony of Ringer and Emma on the ground that they failed to appear after being subpoenaed for the taking of their depositions on December 12 and 13, 1984, respectively.

On December 12, 1984, Design filed a motion to exclude certain lay and expert witnesses from testifying at the preliminary injunction hearing.[23] On December 17, 1984, Baird filed a motion to strike a witness list filed by Plaintiff on December 13, 1984. Baird asserted that it had never been served with the list, and that the witnesses had not been disclosed by Plaintiff as requested in previous interrogatories from Baird.

---

[23] Design requested the exclusion of "experts" Jack Brownrigg, CPA, and Wilfred Yuasa, on the ground that at their depositions they testified that neither Ringer nor Plaintiff's counsel had contacted them to testify on Plaintiff's behalf. Based on Plaintiff's counsel's representation that it intended to call only one expert, Mark Hagadone, as a witness at the injunction hearing, Design also requested that all other expert witnesses previously identified by Plaintiff be excluded. Finally, Design requested that one Jerry Imai, whom Plaintiff had deposed without notice to the other parties, be excluded.

All the motions were heard on December 17, 1984, prior to the preliminary injunction hearing, and orally granted on that day.[24] A written order was entered on December 21, 1984, granting the motions for exclusion of witnesses (Exclusion Order). The Exclusion Order also authorized Defendants to "move for an award of attorney's fees and costs," and set February 1, 1985, as the date for hearing any such motions. On February 21, 1985, the court entered an order denying Plaintiff's motion to reconsider the Exclusion Order. Also on December 21, 1984, an order was entered denying Plaintiff's motion for preliminary injunction.[25]

1.

*The Lay Witnesses*

Plaintiff argues that the lay witnesses whose names it had disclosed on December 13, 1984, should not have been excluded since the October 25, 1984 minute order did not set a date for disclosing their names. We find no abuse of discretion. *Hindmon v. National-Ben Franklin Life Ins. Corp., supra.*

Since the witnesses' names were not filed with the court until December 13, 1984, and Plaintiff did not reveal them in response to Baird's interrogatories, Baird was denied the opportunity to at least interview them in preparation for the injunction hearing. It would have been manifestly unfair to allow the witnesses to testify. Plaintiff's argument that the witnesses were not known when it received Baird's interrogatories does not convince us that the court abused its discretion.

---

[24] Plaintiff contends that the court should not have orally granted the motions because it had heard no evidence to support them. The record does not show that Plaintiff requested the court reporter to prepare the transcript of the December 17, 1984 hearing and it is not part of the record on appeal. Consequently, Plaintiff cannot prevail on the argument. *Johnson v. Robert's Haw. Tour, Inc.,* 4 Haw. App. 175, 664 P.2d 262 (1983).

[25] See footnote 3, *supra.*

## 2.

### *Ringer and Emma*

Since the written Compelling Order was not filed until December 17, 1984, the day of the injunction hearing, and Ringer's and Emma's failure to give discovery took place on December 12 and 13, respectively, Plaintiff argues the court erred in excluding their testimony. In essence, Plaintiff's argument is that it should not be sanctioned for violating an oral order. We disagree.

In *Lothspeich v. Sam Fong,* 6 Haw. App. 118, 711 P.2d 1310 (1985), we said,

> [an] oral ruling [is] a sufficent basis upon which to seek sanctions from the court, although a written order is normally required.

*Id.* at 124, 711 P.2d at 1315. In *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.,* 663 F.2d 371 (2nd Cir. 1981), it was held that an oral order was a sufficient basis for discovery sanctions where the oral order was made after a hearing at which the court was made aware of all the circumstances of the discovery abuse.

The circumstances here are similar to those in *Penthouse.* The Motion To Compel clearly set forth the discovery Baird wished the court to direct Plaintiff to make. Plaintiff was afforded a hearing, and the court and Plaintiff were both aware of what was being sought. Ringer and Emma simply refused to comply with the oral order. Plaintiff cannot, on this record, argue that it did not understand what its or Ringer's and Emma's responsibilities were under the oral order.

## 3.

### *Attorney's Fees and Costs*

On January 18, 1985, Baird and Design filed separate motions for attorney's fees and costs. Baird was awarded $5,131.15 in an order entered on February 21, 1985, and on February 22, 1985, an order awarding Design $1,394.64 was entered. Baird and Design

argue on appeal that Rule 37, HRCP, authorizes the award of their fees and costs.[26] We hold that, on the basis of the record, only part of the award to Baird was authorized, and the award to Design was not.

A court may order a party or its attorney to pay an opposing party's attorney's fees and costs as a sanction for abusive litigation practices under (1) its inherent power; (2) HRS § 603-21.9(1) and (6) (1985);[27] or (3) Rule 37, *supra. Kukui Nuts of Haw., Inc. v. R. Baird & Co.*, 6 Haw. App. 431, 726 P.2d 268 (1986) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) ) *(Kukui Nuts I)*. However, the authority of the court to assess attorney's fees is not without limitation. In awarding attorney's fees under (1) and (2), the court is required to make a specific finding of bad faith. *Id.* Under Rule 37(b), failure to comply with a prior discovery order is prerequisite to an award of attorney's fees. *Lothspeich v. Sam Fong, supra.*

---

[26] The pertinent part of Rule 37(b), HRCP, provides:

Rule 37. **FAILURE TO MAKE DISCOVERY: SANCTIONS.**

\* \* \*

(b) **Failure to Comply with Order.**

\* \* \*

In lieu of any of the [sanctions authorized in Rule 37(b)(2)(A), (B), (C), (D) and (E)] or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

[27] HRS § 603-21.9(1) and (6) (1985) provides in pertinent part:

**Powers.** The several circuit courts shall have power:

(1) To make and issue all orders and writs necessary or appropriate in aid of their original or appellate jurisdiction;

\* \* \*

(6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

The only discovery order in this case is the Compelling Order of December 17, 1984,[28] and the only request based on that order was made by Baird as follows:

II. Costs Relating to Bunzie Ringer

| | | |
|---|---|---|
| Court reporter fee for deposition appearance on 12/12/84 | $ 65.94 | |
| Deposition notice filing fee and expenses of subpoena | 31.67 | |
| Attorneys' fees for 1.5 hrs. for preparing for deposition and 6.5 hrs. for preparing Motion to Dismiss or For and [sic] Order Excluding Testimony of Bunzie Ringer and Emma Ringer | 707.20 | |
| Subtotal | | $ 804.81 |

III. Costs Relating to Emma Ringer

| | | |
|---|---|---|
| Deposition notice filing fee and expenses of subpoena | $ 31.67 | |
| Attorneys' fees for .5 hrs. for preparing for her deposition scheduled for 12/13/84 | 44.20 | |
| Subtotal | | $ 75.87 |

---

[28] Under Rule 37(a)(4), HRCP, Baird was entitled to apply for an award of reasonable expenses in obtaining the Compelling Order. The record does not reveal that Baird did so.

IV. Costs Relating to Ron Ramie

| | |
|---|---:|
| Witness fees charged by Island Investigative Services for deposition on 12/13/84 | $210.90 |
| Deposition notice filing fee and expenses of subpoena | 31.67 |
| Attorneys' fees for 3.0 hrs. for needless time spent during deposition on 12/13/84 | 265.20 |
| Subtotal | $ 507.77 |
| Total | $1,388.45 |

The remainder of the attorney's fees and costs requested by Baird and Design were based on Plaintiff's allegedly abusive tactics, not on any violation of a discovery order. The award of those fees and costs required a finding of bad faith. *Kukui Nuts I, supra.* No such finding was made in this case.

## CONCLUSION

In accordance with the above discussion, we: (1) reverse the summary judgments dismissing the complaint as to Defendants; (2) affirm the award of attorney's fees and costs to Baird of $1,388.45; (3) vacate the balance of attorney's fees and costs awarded to Baird and all attorney's fees and costs awarded to Design; (4) vacate the October 14, 1987 judgment awarding attorney's fees to Liven; and (5) remand for further proceedings consistent with this opinion. We instruct the lower court on remand to allow Plaintiff to amend the complaint if it wishes to do so, and to conduct a hearing on the question whether the award of attorney's fees and costs vacated here should be reinstated as discovery sanctions or for abusive litigation practices.

*William H. Lawson* for plaintiff.

*Barry Kurren (John Percy Powell* with him on the brief; *Burke, Sakai, McPheeters, Bordner & Gilardy,* of counsel) for Baird.

*Douglas H. Knowlton (Walter Davis* with him on the brief; *Davis, Reid & Richards,* of counsel) for Design.

*Keith K. Hiraoka (Arthur F. Roeca* with him on the brief; *Roeca & Louie,* of counsel) for Retailers.

*Mervyn M. Kotake (Matsubara, Lee & Kotake,* of counsel) for Liven.