Rockingham
No. 2001-718

MICHAEL GUGLIELMO, SR. *& a.*

v.

WORLDCOM, INC. *& a.*

Argued: May 16, 2002
Opinion Issued: September 16, 2002

*Bouchard & Kleinman, P.A.*, of Manchester (*Kenneth G. Bouchard* and *Nicholas D. Wright* on the brief, and *Mr. Wright* orally) and *Mittelholzer, Ferrini & Dibble, P.L.L.C.*, of Hampton (*Thomas Ferrini* on the brief), for the plaintiffs.

*Orr & Reno, P.A.*, of Concord (*James P. Basset* and *Phillip S. Bixby* on the brief) and *Adam H. Charnes*, of Washington, D.C., by brief and orally for defendant WorldCom, Inc.

*Ransmeier & Spellman, Professional Corporation*, of Concord (*Garry R. Lane* and *Tina L. Annis* on the brief) and *Burr & Forman LLP* of

Atlanta, Georgia (*Gregory F. Harley* on the brief), for defendants ILD Telecommunications, Inc. and ILD Teleservices, Inc.

DALIANIS, J. This is an interlocutory appeal from the order of the Superior Court (*McHugh*, J.) denying the motion by the defendants, WorldCom, Inc., ILD Teleservices, Inc. and ILD Telecommunications, Inc., to dismiss the plaintiffs' claims for violations of the anti-monopoly statute, *see* RSA 356:2, :3 (1995), and the Consumer Protection Act (CPA), *see* RSA 358-A:2 (1995). *See* SUP. CT. R. 8. The parties have transferred, and we have accepted, the following question of law: Does the federal filed rate doctrine bar the plaintiffs' anti-monopoly statute and CPA claims? We answer the transferred question in the affirmative and reverse the denial of the motion to dismiss. We do not address issues briefed by the parties concerning questions we specifically declined.

Upon review of the ruling on this motion to dismiss, we assume the following facts to be true for purposes of this appeal. *See Hobin v. Coldwell Banker Residential Affiliates*, 144 N.H. 626, 627 (2000). We also accept the statement of the case presented in the interlocutory transfer. *See Trovato v. Deveau*, 143 N.H. 523, 524 (1999).

The plaintiffs are friends and family of New Hampshire State Prison (NHSP) inmates who receive and pay for interstate collect calls from inmates. The defendants provide interstate payphone services to NHSP inmates, pursuant to exclusive contracts with the State. These contracts require inmates to make only collect calls. To place collect calls, the inmates must use the defendants' services, and may not use any other collect-call service, such as "1-800-Collect" or calling cards. Regardless of whether they have their own contracts with telephone service providers, the plaintiffs must accept collect calls from inmates, at the defendants' rates, or forego telephone contact with NHSP inmates.

The original agreements between the State and the defendants provided for a "commission" to be paid the State in return for the exclusive rights to telephone service at NHSP. The contracts also stated that the rates charged would not exceed those charged the inmates under the previous or current agreements and would conform to those set by the New Hampshire Public Utilities Commission.

In December 1997, the warden of the NHSP issued a prison memo regarding telephone charges, setting forth the rates that would be charged for interstate collect calls. The rates subsequently charged the plaintiffs, however, were higher than those set forth in the December 1997 memo.

In July 1999, the contracts between the State and the defendants were modified. According to newspaper articles, the amended contracts reduced the per-minute rate and also the initial fee for inmate-initiated interstate

collect calls. Despite the "general understanding that the rates had been reduced," the defendants raised both the per-minute charge and initial access fee in July and August 1999.

In February 2000, the plaintiffs brought a four-count class action against the defendants in superior court, alleging that the defendants: (1) negligently failed to conform to the price structure in a 1997 contract with the State and, as a result, overcharged the plaintiffs; (2) were liable, under the doctrine of respondeat superior, for their employees' failure to inform the inmates and the plaintiffs of the correct rates; (3) violated New Hampshire's anti-monopoly statute by unreasonably restraining trade and establishing a monopoly over inmate-initiated collect calls; and (4) violated the CPA by engaging in unfair competition and trade practices. In their writ, the plaintiffs sought monetary damages only.

Initially, the defendants removed the case to federal court, asserting that the Federal Communications Act (FCA) completely preempted the plaintiffs' claims, and thus deprived the superior court of jurisdiction. *See Louis. & Nash. R.R. v. Maxwell*, 237 U.S. 94, 97 (1915). The federal court disagreed and remanded the case to superior court.

The defendants then moved to dismiss the plaintiffs' writ, arguing that the plaintiffs' claims were barred by the filed rate doctrine. The superior court granted the defendants' motion to dismiss the negligence and respondeat superior claims, and denied the motion to dismiss the anti-trust and CPA claims.

In reviewing an order on a motion to dismiss, "we ask whether the plaintiffs' allegations are reasonably susceptible of a construction that would permit recovery." *Hacking v. Town of Belmont*, 143 N.H. 546, 549 (1999) (brackets and quotation omitted). "We assume the truth of the plaintiffs' well pleaded allegations of fact and construe all reasonable inferences from them most favorably to the plaintiffs." *Id.* (brackets and quotation omitted). We need not, however, accept statements in the complaint that are merely legal conclusions. *See Mt. Springs Water Co. v. Mt. Lakes Vill. Dist.*, 126 N.H. 199, 201 (1985).

*I. Filed Rate Doctrine*

Section 203(a) of the FCA requires every common carrier to file with the Federal Communications Commission (FCC) "schedules" (tariffs) "showing all charges" and "showing the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a) (1994). Section 203(c) makes it unlawful for a carrier to "charge . . . a greater or less[er] . . . compensation for such communication, or for any service in connection therewith . . . than the charges specified in the schedule then in effect" or to "extend to any person any privileges or facilities in such communication,

or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule." 47 U.S.C. § 203(c) (1994).

■ Thus, as a matter of federal law, common carriers, such as the defendants, are prohibited from charging rates or from providing related services other than as set forth in the applicable tariff. *See Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981); *American Telephone & Telegraph Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 222 (1998) (*Central Office*). This is referred to as the "filed rate doctrine."

■ Where the filed rate doctrine applies, state law claims are preempted. *See Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 962 (1986); *Appeal of Northern Utilities*, 136 N.H. 449, 453 (1992). This type of preemption "is not a rule of administrative law designed to ensure that . . . courts respect the decisions of federal administrative agencies, but a matter of enforcing the Supremacy Clause." *Nantahala Power & Light Co.*, 476 U.S. at 963. This type of preemption also differs from the doctrine of "complete preemption," which is a rule of federal jurisdiction, and not a substantive defense to the merits of the plaintiffs' state law claims. *See A.S.I. Worldwide Communications Corp. v. Worldcom*, 115 F. Supp. 2d 201, 205 n. 6 (D.N.H. 2000).

■ The filed rate doctrine not only "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority," *Arkansas Louisiana Gas Co.*, 453 U.S. at 577, but also forbids a subscriber to avoid paying the tariff rate "by invoking common-law claims and defenses such as ignorance, estoppel, or prior agreement to a different rate." *Reiter v. Cooper*, 507 U.S. 258, 266 (1993). The filed tariff is "the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff." *Central Office*, 524 U.S. at 230 (Rehnquist, C.J., concurring). "The rights and liabilities as defined by the tariff cannot be varied or enlarged by either contract or tort of the common carrier." *Id.* at 227 (quotation omitted). Thus, under the doctrine, a common carrier may not adjust its filed rate upwards or downwards and a subscriber may not seek to enforce any rate other than the filed rate. *See id.* at 222.

■ Ignorance of the filed rate is no excuse. *See id.* Customers are conclusively presumed to know the contents of the carrier's tariff. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998). "[E]ven if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff." *Central Office*, 524 U.S. at 222.

■ The filed rate doctrine "is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress." *Id.* (quotation omitted). The doctrine "is based both on historical antipathy to rate setting by courts, deemed a task they are inherently unsuited to perform competently, and on a policy of forbidding price discrimination by public utilities and common carriers." *Arsberry v. Illinois,* 244 F.3d 558, 562 (7th Cir.), *cert. denied,* 122 S. Ct. 661 (2001). The doctrine prohibits courts from determining whether a rate charged is reasonable, or from awarding damages based upon the difference between the actual tariff and a hypothetical lawful tariff. *See id.* It likewise ensures that similarly situated customers pay the same rates for the same services. *See Central Office,* 524 U.S. at 223. The filed rate doctrine applies to the FCA, the act under which the defendants filed their rates with the FCC. *See id.* at 222.

## II. Anti-Trust Claim

■ The plaintiffs' anti-trust claim alleges that the defendants entered into agreements with the State for prisoner telephone service, which have produced "adverse anti-competitive effects within the market for prisoner-initiated collect telephone calls" and have "unreasonably restrained trade and established a monopoly power over commerce involving the market for prisoner-initiated collect telephone calls." As a result of this conduct, the plaintiffs allege that they have "paid unjustified, exorbitant and unreasonable charges for telephone calls received from prisoners and have been prevented from choosing other options of telephone service" for receiving prisoner calls.

Absent from the plaintiffs' complaint, however, is an allegation that the rates charged the plaintiffs were not the rates stated in the applicable tariff. "[A]ny subscriber who pays the filed rate *has suffered no legally cognizable injury* because the rate is *per se* reasonable." *Weinberg v. Sprint Corp.,* 801 A.2d 281, 289 (N.J. 2002) (quotation omitted); *see Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 18 (2d Cir. 1994) ("any filed rate — that is, one approved by the governing regulatory agency — is . . . unassailable in judicial proceedings brought by ratepayers"). Accordingly, the plaintiffs have failed to allege a legally cognizable injury. *See Weinberg,* 801 A.2d at 289.

The filed rate doctrine precludes awarding the plaintiffs monetary damages for their alleged anti-trust injury. *See id.* at 287. "[T]he filed rate doctrine bars money damages from telecommunication carriers where the damage claims are premised on state contract principles, consumer fraud, or other bases on which plaintiffs seek to enforce a rate other than the filed rate." *Id.; see Marcus,* 138 F.3d at 60-61 (filed rate doctrine barred

claim for damages where plaintiff challenged defendant's practice of billing in whole minute increments).

The plaintiffs deny that they are challenging rates. Rather, they assert that they are challenging "the anti-competitive behavior of conspiring to create a contract where the supposed market regulator (the State of New Hampshire) earned a sizeable profit from the market it supposedly regulated." Like the plaintiffs in *Arsberry*, 244 F.3d at 562, the plaintiffs object "to the deals by which the correctional authorities . . . have granted the exclusive rights to telephone companies in return for what the plaintiffs characterize as kickbacks." Unlike the plaintiffs in *Arsberry*, however, the plaintiffs here do not seek injunctive relief, but rather seek monetary damages only. *See id.* While the filed rate doctrine may not bar an anti-trust claim for which injunctive relief is sought, it *does* bar an anti-trust claim for which money damages are sought. *See Square D Co. v. Niagara Frontier Tariff Bur.*, 476 U.S. 409, 422 & n. 28 (1986); *Weinberg*, 801 A.2d at 287; *Daleure v. Kentucky*, 119 F. Supp. 2d 683, 690 (W.D. Ky. 2000).

The plaintiffs' allegations belie their assertion that their anti-trust claim is not a rate claim. The only anti-trust injury the plaintiffs allege is that the defendants' alleged anti-competitive behavior has caused them to pay "unjustified, exorbitant and unreasonable charges for telephone calls received from prisoners." *Cf. Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 47 (1987) (to prevail on private anti-trust action alleging conspiracy, plaintiff must prove damages). As the court in *Daleure*, 119 F. Supp. 2d at 690, observed in response to a similar argument, "As recipients of inmate calls, Plaintiffs only have standing to challenge the price that they pay for those calls. Moreover, the commissioned exclusive supplier contracts could not be anti-competitive unless they caused excessive rates or otherwise restricted competition."

In holding that the filed rate doctrine bars the plaintiffs' anti-trust claim, we join other courts that have dismissed nearly identical anti-trust challenges to exclusive long distance service contracts for prisons. *See Arsberry*, 244 F.3d at 561-62 (filed rate doctrine barred anti-trust claim brought by inmates and their families and friends challenging arrangements between State prisons and jails and telephone companies providing exclusive inmate telephone service); *Daleure*, 119 F. Supp. 2d at 690 (filed rate doctrine bars damages claims under the Sherman Act and Section 1983 brought by recipients of collect calls from county jail inmates against jails and exclusive-contract telephone companies); *Miranda v. Michigan*, 168 F. Supp. 2d 685 (E.D. Mich. 2001) (dismissing Sherman Act and state anti-trust claims brought by recipients of collect calls from state prison inmates against State and telephone companies).

*III. CPA Claim*

■ The plaintiffs' CPA claim alleges that the defendants willfully engaged in "unfair, unlawful and deceptive rates and billing practices." In particular, the plaintiffs claim that the defendants: (1) deviated from the rate set forth in their contracts with the State; (2) failed to notify the plaintiffs that the new agreements with the State increased the rates charged; (3) charged the plaintiffs for times when it was impossible for calls to have been made by prison inmates; and (4) permitted three months of phone charges for customers to accrue before billing customers and revealing the actual rates charged. For this alleged conduct, the plaintiffs seek treble damages and attorney's fees.

This claim, like the plaintiffs' anti-trust claim, is barred by the filed rate doctrine because it seeks to enforce rates and services covered by the applicable tariff. *See Central Office*, 524 U.S. at 223-24. At bottom, the plaintiffs assert that the defendants deceived them about the rates for collect calls and billed them inappropriately for these calls. "[T]he filed rate doctrine bars state-law claims not only that pertain directly to the *price* of telecommunications services, but also state-law claims that concern various *nonprice* aspects such as servicing, provisioning and billing options." *ICOM Holding, Inc. v. MCI WorldCom, Inc.*, 238 F.3d 219, 222 (2d Cir. 2001) (quotation omitted); *see A.S.I. Worldwide Communications Corp.*, 115 F. Supp. 2d at 213 (filed rate doctrine barred CPA claim alleging that defendant double-billed and also erroneously billed plaintiff for services provided to phantom customers).

The plaintiffs' assertion that their claim challenges allegedly deceptive conduct related to rates, and not the rates themselves, is unpersuasive. Because customers are conclusively presumed to know the tariffed rate, "[a] reasonable customer may not rely on any statements by [a carrier] that contradict the terms of its filed tariff." *Marcus*, 138 F.3d at 64. Any reliance upon the defendants' alleged misrepresentations regarding their rates is unreasonable as a matter of law. *See Transportation Data Interchange v. AT&T Corp.*, 920 F. Supp. 86, 89 (D. Md. 1996).

The plaintiffs' reliance upon numerous cases regarding whether the FCA completely preempts state law claims is unavailing. *See, e.g., Crump v. WorldCom, Inc.*, 128 F. Supp. 2d 549 (W.D. Tenn. 2001). As discussed above, this interlocutory appeal does not concern the doctrine of complete preemption, but rather the defense of ordinary preemption. These are different doctrines.

■ The plaintiffs also assert that their claims are permitted by the savings clause of the FCA. *See* 47 U.S.C. § 414 (1994). While the savings

clause may preserve claims that lie outside the applicable tariff, *see A.S.I. Worldwide Communications Corp.*, 115 F. Supp. 2d at 213, it does not save claims governed by the applicable tariff. *See Central Office*, 524 U.S. at 227-28. The claims at issue, related to rates and billing practices, are governed by the applicable tariff and thus are not saved by the savings clause.

*Reversed and remanded.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.