123 P.3d 194

Brendan BALTHAZAR and Michael R. Savona, M.D., Plaintiffs–Appellants

v.

VERIZON HAWAII, INC., Defendant–Appellee

and

Hawaiian Telephone Company, GTE Hawaiian Telephone Company, Inc., John Does 1–5, John Doe Corporations 1–5, John Doe Partnerships 1–5, Roe Non–Profit Corporations 1–5, and Roe Governmental Agencies 1–5, Defendants.

No. 26977.

Supreme Court of Hawai'i.

Nov. 25, 2005.

James Krueger, Wailuku, and Joseph W. Cotchett, Nancy L. Fineman, & Nanci E. Nishimura, pro hac vice, for plaintiffs-appellants.

Jeffrey S. Portnoy, Honolulu, (Cades Schutte) and Andrew G. McBride, Helgi C. Walker, & M. Evan Corcoran (Wiley Rein &

Fielding, LLP), pro hac vice, for defendant-appellee Verizon Hawaii, Inc.

MOON, C.J., LEVINSON, ACOBA, and DUFFY, JJ., and Circuit Judge Blondin in Place of NAKAYAMA, J., Recused.

Opinion of the Court by ACOBA, J.

We hold that (1) because the filed-rate doctrine imputes knowledge of the disclosures contained in a tariff filed with a regulatory agency like the Hawai'i Public Utilities Commission (HPUC or the HPUC) by a public utility such as Defendant–Appellee Verizon Hawaii, Inc. (Verizon) and its predecessors to customers of such a utility and (2) because under the filed-rate doctrine customers suffer no legally cognizable injury when they pay the filed rate in exchange for services in accordance with a filed tariff, (3) the doctrine bars claims by customers such as Plaintiffs–Appellants Brendan Balthazar and Michael R. Savona, M.D. (Plaintiffs) who allege unfair or deceptive practices under Hawai'i Revised Statutes (HRS) § 480–2 (1993 & Supp.2004) or §§ 481A et seq. (1993) against Verizon when they have paid the filed rate in exchange for services authorized under the tariff. In this appeal, Plaintiffs appeal from the November 4, 2004 judgment of the circuit court of the second circuit (the court) [1] granting summary judgment in favor of Verizon.

## I.

The parties entered into a joint statement of undisputed facts which include the following. In 1968, Verizon's predecessor, GTE Hawaiian Telephone Company, Inc. began offering Touch Calling service. Touch Calling is the brand name under which Verizon markets touch-tone dialing capability. The service offers advantages over the older rotary dialing system including the ability to dial faster and more accurately and the ability to use features available on the network such as voice mail, call forwarding, and call blocking. In 1968, the HPUC authorized Verizon (via Tariff No. 40) to charge a specific tariff to customers electing to acquire Touch Calling service. This tariff is currently described in

Tariff No. 3 which defines Touch Calling service as "provid[ing] for the origination of telephone calls and for the transmission of certain data, through the use of a telephone equipped with push buttons in lieu of a rotary dial, by means of tones instead of pulses." Tariff No. 3 also states that "[i]t is an intent to apply TOUCH CALLING rates and charges whenever a customer is served by exchange lines equipped with TOUCH CALLING capability which terminate on a TOUCH CALLING instrument, whether or not, that instrument is provided by the Telephone Company or by the customer." Touch Calling service was optional for consumers.

While Tariff No. 3 describes Touch Calling service, Tariff No. 1 governs Verizon's general provision of telephone services in Hawai'i and Tariff No. 2 describes Verizon's residence exchange primary service. The rates, terms, definitions, and regulations pertaining to Touch Calling service and described in Tariff No. 3 are in addition to those established by Tariff No. 1 which governs Verizon's general provision of telephone services in Hawai'i. Tariff No. 2 discloses the rates, terms, definitions and regulations relating to exchange primary service, the basic telephone service offered by Verizon. Exchange primary service is defined in Tariff No. 2 as the basic transmission path between the customer's premises and Verizon's central office. Tariff No. 2, Section 1, does not specify Touch Calling service as being part of the exchange primary services for residential subscribers.

Beginning in 1983, Verizon began to upgrade its equipment by switching from analog to digital equipment. By the end of 1998, all of the switches in Verizon's central offices were equipped to provide touch tone dialing and "any consumer in Hawai'i who had a touch tone phone could acquire touch tone dialing capability by plugging a touch tone phone into the wall jack connected to a touch-tone capable line." In an October 21, 1998 *Honolulu Advertiser* article, The Director of Public Affairs for Verizon's predecessor, GTE Hawaiian Telephone Company, Inc. stated that although the cost of provid-

---

1. The Honorable Joseph E. Cardoza presided.

ing Touch Calling services had declined due to more efficient computerized switching equipment, the Touch Calling charge remained in effect to enable the recovery of costs for other services such as basic local residential service.

In 1993 and 1995, Verizon proposed eliminating the separate Touch Calling fee described in Tariff No. 3, an act that would have made Touch Calling service part of the basic telephone service Verizon offers and would have required rebalancing of rates. The HPUC, however, rejected Verizon's proposal on both occasions, ordering that the existing rate structure be kept intact.

Verizon represents to Hawai'i consumers that they must pay an extra monthly fee in order to receive Touch Calling service. On its website Verizon states:

This line enhancement, also known as Touch Tone, allows you to use a push button telephone and is necessary for most of the additional features available for use with your telephone system.

Consumers, however, are able to access and enjoy the Touch Calling services from their touch tone phones without paying the additional monthly fee.

## II.

On April 11, 2003, Plaintiffs, individually, and on behalf of a class consisting of all Hawai'i consumers who paid fees to Verizon for Touch Calling service for the years 1968 through the present, filed a civil complaint against Verizon. Plaintiffs are customers of Verizon's telephone service who selected and paid for the Touch Calling service.

Plaintiffs claim that Verizon engaged in false, unfair, and/or deceptive practices in violation of HRS §§ 480–2 *et seq.* (prohibiting unfair or deceptive practices in any trade or commerce)[2] and 481A *et seq.* (prohibiting deceptive trade practices by any person including individuals, governments, corporations, and other entities)[3] because identical telephone services are provided to consumers who pay the fee and consumers who do not pay the fee.

On June 10, 2003, Verizon filed its Motion to Dismiss Complaint, arguing that the Complaint was barred by both the filed rate and primary jurisdiction doctrines.

On August 21, 2003, the court entered an Order Denying Verizon's Motion to Dismiss in its entirety.

On September 2, 2003, Verizon filed an Expedited Application for Interlocutory Appeal of Order Denying Verizon's Motion to Dismiss, and to Stay Action During Appeal.

On October 21, 2003, the court entered an Order Denying Verizon's Expedited Application for Interlocutory Appeal, And to Stay Action.

On June 18, 2004, Verizon filed its Motion for Summary Judgment. On July 13, 2004, Plaintiffs filed their opposition to the Motion. On July 23, 2004, Verizon filed a reply.

On August 17, 2004, the court entered an Order Granting Defendant [Verizon's] Motion For Summary Judgment and dismissed the Complaint with prejudice.

On November 4, 2004, the court entered the Final Judgment and Notice of Entry of Order.

On December 1, 2004, Plaintiffs filed a Notice of Appeal.

## III.

On appeal, Plaintiffs contend (1) "[t]he [court] erred when it held that the action is barred by the filed rate doctrine" and (2)

---

**2.** HRS § 480–2(a) states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

**3.** HRS § 481A–3(a) states in pertinent part that "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: ... (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

HRS § 481A–2 defines a "person" for purposes of this chapter as including "an individual, corporation, government, or governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity."

"[t]he [court] erred when it held that the action is barred by the primary jurisdiction doctrine." Verizon answers that (1) "[t]he [court] correctly held that the filed rate doctrine bars [Plaintiffs'] claims on the undisputed facts of the case" and (2) "[t]he [court] properly found that [Plaintiffs'] claims are also barred by the doctrine of primary jurisdiction."

Plaintiffs reply that (1) "Verizon cannot and does not dispute that consumers have the right to bring deceptive business practice lawsuits in [Hawai'i] courts," (2) "[t]he recent United States Supreme Court decision of *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005), provides further support that the filed rate and primary jurisdiction doctrines are not applicable," (3) "[t]he only issue to be decided is whether Verizon engaged in false, unfair and/or deceptive business practices," (4) "Plaintiffs' lawsuit does not challenge Verizon's rates," (5) Plaintiffs challenge only Verizon's description of the benefits of optional Touch Call service, and (6) "[Hawai'i] consumers are not engaging in 'illicit conduct' to obtain Touch Calling."

Plaintiffs request that this court "reverse" the order granting summary judgment in favor of Verizon and "allow this action to go forward on the merits."

### IV.

■ A grant of summary judgment is "appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Ross v. Stouffer Hotel Co.*, 76 Hawai'i 454, 457, 879 P.2d 1037, 1040 (1994) (citing *S. Utsunomiya Enters., Inc. v. Moomuku Country Club*, 75 Haw. 480, 497, 866 P.2d 951, 961,) *reconsideration denied*, 76 Hawai'i 247, 75 Haw. 580, 871 P.2d 795 (1994). In other words, "summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *State v. Zimring*, 52 Haw. 472, 475, 479 P.2d 202, 204 (1970) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Surety Co.*, 381 F.2d 245, 249 (4th Cir.1967)). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (internal citations omitted).[4] We affirm the court's November 4, 2004 final judgment on the ground that the filed rate doctrine barred the action.

### V.

### A.

■ Plaintiffs first argue that the court erred in holding that their claim was barred by the filed-rate doctrine. This doctrine, also known as the filed-tariff doctrine, essentially prohibits a regulated entity from charging rates for its services that differ from the rates filed with the appropriate federal regulatory agency. *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981).

---

4. While we ultimately affirm the court, we do not necessarily agree with Verizon's contention that because Plaintiffs entered into a joint statement of undisputed facts and Plaintiffs recognized that the "agreed-upon facts were sufficient to decide the[ ] defenses ... [,] there can be no disputed material facts relevant to the legal questions before this [c]ourt." The question of whether a practice constitutes an unfair or deceptive trade practice is ordinarily a question of fact. *Kukui Nuts of Hawaii, Inc. v. R. Baird & Co.*, 7 Haw. App. 598, 612, 789 P.2d 501, 511 (1990) (citing *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F.Supp. 131 (D.Colo.1980)). That Plaintiffs have submitted to a joint statement of facts with Verizon and that Plaintiffs recognize that those facts are sufficient to decide defenses, does not mean that Verizon is necessarily entitled to summary judgment.

We agree with Plaintiffs that as a general proposition a dispute may arise regarding the meaning of facts and the inferences that may be drawn from them. Because "the evidence and all inferences must be viewed in the light most favorable to the non-moving party," *Kukui Nuts*, 7 Haw. App. at 610, 789 P.2d at 510 (citing *Carrington v. Sears, Roebuck & Co.*, 5 Haw.App. 194, 683 P.2d 1220 (1984)), it cannot be said that Plaintiffs "cannot prevail under any circumstances" simply because they confirm the facts upon which Verizon bases its defenses.

The filed-rate doctrine was articulated a century ago in the context of the Interstate Commerce Act.

> [T]he rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable.

*Louisville & Nashville R.R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853 (1915) (emphasis added). Shippers and carriers were thus bound under the doctrine to the rate set forth in the duly filed tariff and were prevented from "invoking common-law claims and defenses such as ignorance, estoppel, or prior agreement" to establish a rate different from the tariff rate. *Reiter v. Cooper,* 507 U.S. 258, 266, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).

The filed-rate doctrine was eventually applied beyond the interstate transportation industry, "extend[ing] across the spectrum of regulated utilities," *Ark. La. Gas Co.,* 453 U.S. at 577, 101 S.Ct. 2925, with the twin aims of (1) preventing service or rate discrimination among consumers and (2) preventing courts from intruding upon the rate-making authority of federal agencies. *Bryan v. BellSouth Communications, Inc.,* 377 F.3d 424, 429 (4th Cir.2004). The doctrine sets forth principles that may appear "harsh" under certain circumstances in order to advance the dual goals of promoting nondiscrimination and non justiciability. *Am. Tel. & Tel. Co. v. Central Office Tel., Inc.,* 524 U.S. 214, 223, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998). For example, notice of the terms and rates established in a filed tariff is imputed to customers. *Evanns v. AT & T Corp.,* 229 F.3d 837, 840 (9th Cir.2000). Therefore, "[i]gnorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed." *Maxwell,* 237 U.S. at 97, 35 S.Ct. 494. Furthermore, even a carrier's intentional misrepresentation will not bind the carrier to its promised rate if the promise contradicts the rate established in the published tariff. *Central Office Tel.,* 524 U.S. at 222, 118 S.Ct. 1956 (citing *Kansas City Southern Ry. Co. v. Carl,* 227 U.S. 639, 653, 33 S.Ct. 391, 57 L.Ed. 683 (1913).) Therefore, neither the tort of the carrier nor the existence of a contract will work to vary or enlarge the rights defined in a tariff. *Keogh v. Chicago & Northwestern Ry. Co. .,* 260 U.S. 156, 163, 43 S.Ct. 47, 67 L.Ed. 183 (1922).

### B.

Despite its federal origins, the principles of the filed-rate doctrine have also been applied in cases where the rates are filed with a state regulatory authority rather than a federal one. *See Molokoa Village Dev. Co. v. Kauai Elec. Co.,* 60 Haw. 582, 587, 593 P.2d 375, 379 (1979) (stating that the rule that prevents carriers from being bound under equitable doctrines to their undercharges "applies equally to other utilities" and citing, *inter alia, South Tahoe Gas Co. v. Hofmann Land Improvement Co.,* 25 Cal.App.3d 750, 102 Cal.Rptr. 286 (1972), a case involving a utility company that filed rates with a state regulatory agency); *Tex. Commercial Energy v. TXU Energy, Inc.,* 413 F.3d 503, 509–10 (5th Cir.2005) (holding that energy rates subject to the Public Utility Commission of Texas' oversight invoked the filed-rate doctrine); *Korte v. Allstate Ins. Co.,* 48 F.Supp.2d 647, 651 (E.D.Tex.1999) (extending the application of the filed rate doctrine to cases involving insurance rates where a state agency has authority to determine reasonableness of the rates "pursuant to a statutory scheme"); *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 20 (2d Cir.1994) (stating that "the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies"); *H.J., Inc. v. Northwestern Bell Tel. Co.,* 954 F.2d 485, 494–95 (8th Cir.1992) (where the rate in question was filed with the Minnesota Public Utilities Commission, the court found "no reason to distinguish between rates promulgated by state and federal agencies" and held the filed-rate doctrine barred plaintiff's RICO claims); *Taffet v. Southern Co.,* 967 F.2d 1483, 1494 (11th Cir. 1992) (holding the filed-rate doctrine applicable in cases where the rate at issue was set by a state rate-making agency if the legislature endowed the agency with the power to determine the reasonableness of rates).

## VI.

### A.

Within the telecommunications sector, judicial treatment of claims that directly attack the validity or reasonableness of rates or terms defined in a tariff filed with a federal agency varies depending upon the jurisdiction. Some courts hold that challenges to the validity or reasonableness of rates, terms or conditions in long-distance service contracts are questions of federal law and cannot be brought as state law claims. *See Bryan,* 377 F.3d at 429 (holding that a "claim that seeks to alter the terms of the relationship between carrier and consumer set forth in a filed tariff ... presents a federal question"); *Boomer v. AT & T Corp.,* 309 F.3d 404, 420 (7th Cir.2002) (holding that Section 201(b) of the Communications Act which declares unlawful all charges and practices that are unjust or unreasonable, evidences Congressional intent that federal law govern the validity of rates, terms, and conditions in long-distance telephone contracts (citing 47 U.S.C. § 201(b))). In contrast, other courts hold that the filed-rate doctrine bars all claims, whether state or federal, that challenge the validity or reasonableness of rates in telephone service contracts. *See Poulos v. Caesars World, Inc.,* 379 F.3d 654, 671 n. 5 (9th Cir.2004) (stating that the filed-rate doctrine bars both state and federal claims that "challenge the terms of a tariff that a federal agency has reviewed and filed" (internal quotation marks and citation omitted)); *Fax Telecommunicaciones Inc. v. AT & T,* 138 F.3d 479, 489 (2d. Cir.1998) (indicating that because the filed-rate doctrine protects the exclusive role of federal agencies in determining reasonable rates for telecommunications services, judicial enforcement of the promised rate and an award of damages to plaintiff would embroil the court in "setting and applying a rate apart from that judged reasonable by the FCC, in violation of the nonjusticiability strand of the filed rate doctrine").

Even when claims do not directly attack the validity or reasonableness of the rates or terms defined in a filed tariff, *see Dreamscape Design, Inc. v. Affinity Network, Inc.,* 414 F.3d 665 (7th Cir.2005), courts have held that the filed-rate doctrine bars claims that seek damages if an award of damages "would have the effect of imposing any rate other than that reflected in the filed tariff." *Id.* at 669. In *Dreamscape,* the plaintiff customer asserted state law claims against defendant telephone service provider including fraudulent advertising, in representing that the provider billed at a per-minute rate rather than the Touch Calling unit rate. *Id.* at 672. The plaintiff argued that the filed tariff doctrine was not invoked (and hence, its state law claims were not preempted by federal law) by maintaining that its amended complaint posed no challenge to the defendant's rates or filed tariff. *Id.* at 670.

In that case, the United States Court of Appeals for the Seventh Circuit found it necessary "to look not only to the nature of the claims advanced, but also to the relief sought" in order to determine whether the filed-rate doctrine would result in federal preemption of plaintiff's state law claims. *Id.* at 672. The appeals court held that the filed-rate doctrine did indeed bar the plaintiff's action because it sought money damages, specifically, the amount the plaintiff claimed to have overspent for the service in reliance on defendant's allegedly fraudulent representations. *Id.* at 672–73. The appeals court held that awarding damages to the plaintiff would invalidate the filed rates and would "effectively grant a lower rate to [plaintiff] than to other customers not included in the putative class." *Id.*

Similarly, that court denied the plaintiff's request for punitive damages, holding that such damages would "amount to a retroactive rate change as well." *Id.* at 673; *see also Hill v. BellSouth Telecomms., Inc.,* 364 F.3d 1308, 1315–17 (11th Cir.2004) (denying an award of damages to plaintiff for although plaintiff argued that her claim did not attack the filed rate directly, the award of compensatory damages would retroactively reduce the rate paid by the plaintiff to one below the filed rate paid by defendant's other customers).

### B.

Courts have also addressed the question of whether the filed-rate doctrine bars claims

that neither directly attack the rates or service terms in a filed tariff nor seek money damages. In *Marcus v. AT & T Corp.*, 138 F.3d 46 (2d Cir.1998) [hereinafter "*Marcus II* "], the circuit court of appeals held that the principles of the filed-rate doctrine applied to bar the plaintiffs subscribers' request for an injunction against defendant AT & T's allegedly fraudulent practice of failing to disclose certain aspects of its billing practice. *Id.* at 62–64. Although AT & T's practice of rounding up to the next minute in telephone service billing was disclosed in the tariff it filed with the FCC, plaintiffs argued that AT & T's failure to specifically disclose this practice in its advertisements and contracts with customers was *inter alia* an act of fraud and a deceptive practice. *Id.* at 51.

The second circuit held that granting injunctive relief, unlike an award for damages, would not subvert the filed-rate doctrine's goal of promoting nondiscriminatory prices since plaintiffs would still pay the filed rate. *Id.* at 62. Likewise, an award of injunctive relief, in contrast to an award of damages, would not undermine the filed-rate doctrine's goal of nonjusticiability as such injunctive relief "would neither enmesh the court in the rate-making nor undermine the regulatory authority of the FCC." *Id.* Nonetheless, the *Marcus* court dismissed the plaintiffs' claim for injunctive relief in part because plaintiffs could not prove reasonable reliance on AT & T's statements required for recovery under the claims of negligent misrepresentation and deceptive practices. *Id.* at 63–64. Given that the filed-rate doctrine presumes knowledge on the part of the customer of the rates and terms contained in a filed tariff, *id.* at 63, plaintiffs were prohibited from asserting that they "reasonably relied on any misrepresentations by AT & T[,]" *id.*

Furthermore, the circuit court of appeals determined that the plaintiffs "suffered no legally cognizable damages because they paid the tariff rate." *Id.* at 64 (quoting *Marcus v. AT & T Corp.*, 938 F.Supp. 1158, 1172 (S.D.N.Y.1996)) [hereinafter "*Marcus I* "], *aff'd by Marcus II, supra. See also Gugliel-mo v. WorldCom, Inc.*, 148 N.H. 309, 808

A.2d 65, 70 (2002) (holding that "[a]ny subscriber who pays the filed rate has suffered no legally cognizable injury because the rate is per se reasonable[ ]" (internal quotation marks and citation omitted)). The *Marcus II* court thus denied injunctive relief to the plaintiffs in part because the filed-rate doctrine precluded plaintiffs from proving two elements essential to the claims for negligent misrepresentation and deceptive acts: (1) reasonable reliance on misstatements made by AT & T and (2) proof of damages. 138 F.3d at 64.

*Stein v. Sprint Corp.*, 22 F.Supp.2d 1210 (D.Kan.1998), also addressed the question of whether the filed-rate doctrine barred an award of injunctive relief against defendant telephone service provider's alleged deceptive advertising. The plaintiff there argued *inter alia* that defendant Sprint Corp. violated Kansas consumer protection statutes by failing to adequately inform customers that a surcharge would be assessed against calls made with fixed-rate calling card plans. *Id.* at 1211. The district court agreed that under the filed-rate doctrine's presumption of knowledge principle, "plaintiff cannot have reasonably relied on any representation or omission by defendant concerning its charges, and any cause of action requiring such reliance must therefore be dismissed." *Id.* at 1214.

That court additionally concluded that because the plaintiff paid the filed rate in question, under the filed-rate doctrine, "plaintiff cannot have suffered any injury from the alleged deceptive practices." *Id.* Nonetheless, the court held that the filed-rate doctrine did not bar the plaintiff's claim for an injunction against Sprint's advertising because the basis for the plaintiff's claim, the Kansas Consumer Protection Act (KCPA), K.S.A. §§ 50–623 to –644, did not require consumers to be "aggrieved" in order to bring a class action claim for injunctive relief under § 50–634(c). *Id.* at 1214–15. The district court emphasized that the KCPA required that consumers be aggrieved in order to bring an action for damages or civil penalty[5] but the KCPA had no such "aggrieved

---

**5.** K.S.A. § 50–634(b) provides in relevant part that "[a] consumer who is aggrieved by a viola-

tion of this act may recover, but not in a class action, damages or a civil penalty[.]" *Stein v.*

requirement" for class actions seeking injunctive relief.[6] *Id.* Thus, the plaintiff's claim for injunctive relief was not barred by the filed-rate doctrine because "a consumer need not have been aggrieved or suffered loss in order to bring a class action for injunctive relief" under the KCPA. *Id.* at 1215.

## VII.

This court applied a key principle of the filed-rate doctrine in *Molokoa Village.* There, the plaintiff-appellee developer claimed that it was entitled to reimbursement from the defendant-appellant electric utility company pursuant to an oral agreement, for electric and telephone systems installation costs in a particular subdivision. 60 Haw. at 583, 593 P.2d at 377. The company argued that it could not be bound to its promise to reimburse the developer in the amount requested because such reimbursement would violate the provisions of a tariff filed with and approved by the HPUC. *Id.* at 583–84, 586, 593 P.2d at 377–78. Although this court did not refer to the filed-rate doctrine, a core principle of the doctrine was applied to resolve the central question of "whether [the tariff] prevent[ed] the enforcement against the [c]ompany of an otherwise enforceable undertaking to reimburse" a certain portion of the developer's costs. *Id.* at 586, 593 P.2d at 378.

In analyzing this issue, this court cited a principal tenet of the filed-rate doctrine that "a public utility can enforce payment for its services in accordance with its established tariff, notwithstanding any agreement to charge less." *Id.* at 587, 593 P.2d at 379 (citing 88 A.L.R.2d 1375 (1963)). It was noted that other courts hold that knowledge of a tariff is imputed to customers dealing with a utility such that the customer is a "knowing violator" unentitled to equitable relief when both parties engage in conduct that violates the tariff. *Id.* at 589–90, 593 P.2d

375, 593 P.2d at 380. *See also Evanns,* 229 F.3d at 840–41 (rejecting plaintiff's claim that defendant had duty to disclose additional information to customers about an assessment that was disclosed in a duly filed tariff).

The oft-cited policy behind this stringent rule is that hardship experienced by those who relied on a carrier's misquotation of rates

> may not be permitted to destroy the more far-reaching need to maintain respect for the rates established under the Commission's procedure and on which other shippers and ... common carriers alike must be able to rely upon as realistic facts rather than a screen which conceals illegal private practices.

*Molokoa Village,* 60 Haw. at 587, 593 P.2d at 379 (ellipsis points in original) (quoting *Bowser & Campbell v. Knox Glass, Inc.,* 390 F.2d 193, 196–97 (3d Cir.1968)). This court, however, did not reach the question of whether the developer was a knowing violator who should be denied recovery under equitable doctrines for the company's breach of its promise to reimburse, as the company could not prove that providing reimbursement to the developer for installation costs violated the tariff. *Id.* at 588–92, 593 P.2d 375, 593 P.2d at 379–82. Furthermore, knowledge of the company's tariffs "would not have made [the developer] aware that the undertaking of the [c]ompany to reimburse the costs of the underground installation was illegal[.]" *Id.* at 590, 593 P.2d at 380. Thus, it was held that due to the "failure of proof of illegality," the company could not assert that its tariff precluded enforcement of its promise to reimburse the developer in the amount sought. *Id.* at 592, 593 P.2d at 381–82.

## VIII.

As previously mentioned, in the instant case, Plaintiffs assert that Verizon's representations that payment of fees was necessary for customers to receive the Touch Call-

---

*Sprint Corp.,* 22 F.Supp.2d 1210, 1214 (D.Kan. 1998) (quoting K.S.A. § 50–634(b)).

6. K.S.A. § 50–634(c) states:
   Whether a consumer seeks or is entitled to recover damages or has an adequate remedy at

law, a consumer may bring a class action for declaratory judgment, an injunction and appropriate ancillary relief, except damages, against an act or practice that violates this act. *Stein,* 22 F.Supp.2d at 1215 (quoting K.S.A. § 50–534(c)).

ing services, violated HRS § 480–2 and HRS § 481A *et seq.* HRS chapter 480 does not expressly define "unfair or deceptive acts or practices." This court, however, has stated that "[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hawai'i Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 228, 11 P.3d 1, 16 (2000) (brackets in original) (internal quotation marks and citation omitted). HRS § 481A–3 enumerates conduct that constitutes deceptive trade practices and contains a catchall clause in § 481A–3(a)(12) to the effect that "any other conduct which similarly creates a likelihood of confusion or of misunderstanding" is a deceptive trade practice. This court has referred to the meaning of a deceptive practice by citing the definition employed by federal courts with respect to "an act causing, as a natural and probable result, a person to do that which he [or she] would not otherwise do." *Keka*, 94 Hawai'i at 228, 11 P.3d at 16 (brackets in original) (citing *Bockenstette v. FTC*, 134 F.2d 369 (10th Cir.1943).)

Claims alleging unfair or deceptive acts that are brought under HRS § 480–2 and seek damages or injunctive relief require a showing of injury. HRS § 480–13(b) (Supp. 2004) provides in relevant part that *"[a]ny consumer who is injured* by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2:(1) *[m]ay sue for damages* sustained ... and (2) *[m]ay bring proceedings to enjoin the unlawful practices* [.]*" (Emphases added.)

Claims alleging a deceptive trade practice under HRS chapter 481A and seeking injunctive relief do not require a showing of actual injury but only that there is likelihood of injury. HRS § 481A–4(a) (1993) provides in relevant part that:

> *[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it* under the

principles of equity and on terms that the court considers reasonable. *Proof of monetary damage, loss of profits, or intent to deceive is not required.*

(Emphases added.)

Furthermore, claims under chapter 481A do not require a showing of actual confusion or misunderstanding. HRS § 481A–3(b) states that "[i]n order to prevail in an action under this chapter, a complainant *need not prove ... actual confusion or misunderstanding.*" (Emphasis added.)

### IX.

We agree with Verizon that the filed-rate doctrine bars Plaintiffs' claims alleging false, unfair, and/or deceptive practices. The filed-rate doctrine is applicable in this case as it involves a public utility (Verizon) [7] subject to the authority of a state regulatory agency, the HPUC, pursuant to HRS § 269–16 (Supp.2004). HRS § 269–16(a) (Supp.2004) provides in relevant part:

> *All rates, fares, charges, classifications, schedules, rules, and practices made, charged, or observed by any public utility, ... shall be just and reasonable and shall be filed with the public utilities commission.* The rates, fares, classifications, charges and rules of every public utility shall be published by the public utility in such manner as the public utilities commission may require, and copies furnished to any person on request.

(Emphasis added.) HRS § 269–16(b) (Supp. 2004) provides in relevant part:

> *No rate, fare, charge, classification, schedule, rule, or practice, ... shall be established, abandoned, modified, or departed from by any public utility, except after thirty days' notice* as prescribed in section 269–12(b) *to the commission and prior*

---

7. HRS § 269–1 (Supp.2004) states in relevant part:

   "Public utility" includes every person who may own, control, operate, or manage as owner, lessee, trustee, receiver, or otherwise, whether under a franchise, charter, license, articles of association, or otherwise, any plant or equipment, or any part thereof, directly or indirectly for public use, for the ... conveyance or transmission of telecommunications messages ... within the State, or between points within the State[.]

*approval by the commission for any increases in rates, fares, or charges.*

(Emphases added.)

Thus, HRS § 269–16 expressly empowers the HPUC "to fix rates, charges and practices of any public utility and to prohibit rebates and unreasonable discrimination between users and customers." *Molokoa,* 60 Haw. at 586, 593 P.2d at 379. "[R]ates and charges should be filed with the [HPUC] and should not be departed from except on prior approval of the [HPUC]." *Id.* (citing HRS § 269–16).

A grant of summary judgment is appropriate only when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Pac. Int'l Servs. Corp. v. Hurip,* 76 Hawai'i 209, 213, 873 P.2d 88, 92 (1994) (quotation marks omitted and citations omitted). Although the existence of an unfair or deceptive trade practice is ordinarily a question of fact, *Kukui Nuts of Hawai'i, Inc. v. R. Baird & Co.,* 7 Haw.App. 598, 612, 789 P.2d 501, 511 (1990) (citing *Adolph Coors v. A. Genderson & Sons, Inc.,* 486 F.Supp. 131 (D.Colo.1980)), we hold that pursuant to the filed-rate doctrine, Plaintiffs' claims fail as a matter of law. Plaintiffs cannot demonstrate that Verizon's allegedly inadequate disclosures constituted an unfair or deceptive trade practice under HRS §§ 480–2 *et seq.* or HRS §§ 481A *et seq.* because: (1) Verizon's tariffs on file with the HPUC disclosed that the Touch Calling fees should be assessed against customers receiving Touch Calling services and (2) knowledge of these disclosures contained in the tariff is imputed to customers, and, thus,

(3) Plaintiffs can prove neither the injury that is required for recovery under HRS § 480–2 nor the likelihood of damage that is required for recovery under chapter 481A.

Verizon's Tariff No. 3 filed with the HPUC clearly disclosed that Touch Calling fees should be assessed against customers receiving Touch Calling services. To reiterate, that Tariff states that "[i]t is an *intent* to apply TOUCH CALLING rates and charges *whenever* a customer is served by exchange lines equipped with TOUCH CALLING capability which terminate on a TOUCH CALLING instrument[.]" (Emphases added.) (Brackets in original.) The plain and unambiguous language of Tariff No. 3 evinces the requirement that Touch Calling rates be paid in return for receipt of Touch Calling services. Because a customer, by definition in the Tariff, receives Touch Calling service when he or she "originat[es] . . . calls . . . through the use of a telephone equipped with push buttons in lieu of a rotary dial," the customer cannot escape the tariff-imposed obligation to pay the Touch Calling rates whenever he or she uses a push button phone connected to Touch Calling-capable lines to make calls.[8]

Moreover, that Tariff No. 2 describes and governs basic exchange primary service and does not specify Touch Calling as being part of this service, indicates that Touch Calling service is not a feature included in Verizon's exchange primary service. It is not material that as a result of Verizon's network upgrades, customers are technically capable of acquiring Touch Calling service without paying the fee simply by plugging a push button

---

**8.** We are not persuaded by Plaintiffs' argument that the Touch Calling charge can *"only* be imposed when the exchange lines, not the network or switches, are served by Touch Calling." (Emphasis in original.) Plaintiffs argue that it is the central office equipment rather than the exchange lines that are equipped with Touch Calling capability. To support their contention, Plaintiffs cite the testimony of Verizon's own agent, Dr. Robert T. Tanimura, who testified before the HPUC that "touch calling service . . . can be provided without significant additional costs in electronic central offices."

Exchange lines are the physical wire running from a customer's premises to the telephone company's central office. It appears fair and accurate to say that exchange lines are equipped

with Touch Calling capability because the lines are connected to equipment possessing Touch Calling capability. While Plaintiffs direct our attention to the holding in *TADMS, Inc. v. Consol. Freightways* that "[a] tariff generally is strictly construed against the carrier . . . and consequently any ambiguity or doubt is resolved in favor of the shipper," 619 F.Supp. 385, 392 (C.D.Cal.1985), we also recognize that a tariff is "not to be read or applied in a manner which would lead to an unjust or absurd conclusion[,]" *Glickfeld v. Howard Van Lines, Inc.,* 213 F.2d 723, 727 (9th Cir.1954). In order to avoid reaching an "unjust or absurd" conclusion, we conclude that the Touch Calling charge can be imposed when the exchange lines are connected to equipment possessing Touch Calling capability.

phone into a wall jack that happens to be connected to a touch-tone capable line.[9] Touch Calling services have not been added *sub silentio* to the terms of Tariff No. 2, an act that would render Tariff No. 3 completely redundant of Tariff No. 2.

Given that "a court should avoid interpreting a tariff in a manner that would nullify specific or substantial tariff provisions[,]" *TADMS, Inc. v. Consol. Freightways*, 619 F.Supp. 385, 392 (C.D.Cal.1985) (citing *S. Pac. Co. v. Lothrop*, 15 F.2d 486, 487 (9th Cir.1926)), we discern no indication that Touch Calling service has been incorporated into and is now also governed by Tariff No. 2. The Touch Calling service was never available to customers under the lower filed rate governed by Tariff No. 2. Rather, the Touch Calling service was available only under the terms of Tariff No. 3. As Plaintiffs themselves admit, "there are two filed rates—one for Touch Call service and one for service without the Touch call option. . . ."

We therefore conclude that Tariff No. 2 and Tariff No. 3 plainly disclose that Touch Calling service is not included in basic telephone service but, instead, is a separate service in exchange for which the applicable Touch Calling fees must be paid.[10] Under the filed-rate doctrine Plaintiffs are presumed to have knowledge of Verizon's tariff disclosures. Because Tariff No. 2 and Tariff No. 3 make plain that Touch Calling fees should be assessed in exchange for Touch Calling service, Plaintiffs are deemed to have constructive knowledge that the fees in question were properly chargeable by Verizon regardless of any misrepresentations Verizon may or may not have made. *See Evanns*, 229 F.3d at 840. Whether Verizon claimed that Touch Calling service would be inaccessible to customers who did not pay the fee is not determinative. Verizon's tariffs make plain that the Touch Calling fees should be paid in exchange for Touch Calling service and knowledge of these tariff provisions is imputed to Plaintiffs under the filed-rate doctrine.

Plaintiffs thus cannot prove that Verizon's disclosures to customers created a likelihood of confusion or misunderstanding that amounted to an unfair or deceptive practice. Because Plaintiffs are presumed to have knowledge of Verizon's tariffs that clearly disclose Verizon's right to charge a fee whenever Touch Calling services are provided, we conclude that no reasonable person could find that Verizon's representations regarding this issue were unfair. Knowledge of the tariffs that is imputed to Plaintiffs also preclude a finding that Verizon's disclosures amounted

---

**9.** Verizon suggests that customers who obtain Touch Calling services in this manner without paying the requisite fee are engaging in "illicit conduct." Plaintiffs respond by referring to the letter Verizon sent to its customers in 1989 informing them that if they wished to continue receiving Touch Calling services they should call Verizon to subscribe or their lines would be restricted to rotary service. Plaintiffs do not clearly explain the relevance of this letter however, one may presume that Plaintiffs seek to highlight the fact that the letter does not inform customers that plugging a touch tone phone into the wall and receiving Touch Calling services without paying the extra fee is contrary to the tariff. We do not reach the question of whether such action by customers amounts to illicit conduct because such an inquiry is not necessary to our decision in this appeal.

**10.** Verizon directs our attention to the fact that it twice proposed eliminating the separate Touch Calling fee described in Tariff No. 3 and increasing service rates but that such proposal was rejected by the HPUC. Verizon also states that the Hawai'i Consumer Advocate opposed eliminating the Touch Calling charge as it would cause "customers who do not use this value-added service . . . to pay the same rates as those customers who do use the service." Verizon cites these facts to support its argument that the HPUC required Touch Calling to "remain a separate, optional service" that had not "implicitly been added" to the basic primary exchange service described by Tariff No. 2.

Plaintiffs emphasize that Verizon "never once asked the HPUC to only eliminate the Touch Call rate" but instead suggests that Verizon "buried" that specific request within its larger request for "massive rate increases." Plaintiffs thus maintain that the HPUC only denied Verizon's request to eliminate Touch Calling fees because it was tied to the request to increase rates overall and the rate increase request was not sufficiently supported by "reliable, probative and substantial evidence." This dispute between Verizon and Plaintiffs regarding the significance of the HPUC's refusal to eliminate the separate Touch Calling fees is not determinative of our decision. That the Touch Calling fees remain separate and in addition to the fees for basic primary exchange service is evident from a plain reading of Tariff No. 2 and Tariff No. 3.

to a deceptive act or an act that caused one to do that which he or she would not otherwise do. Plaintiffs' claims for damages and injunctive relief are therefore barred as the underlying claims alleging unfair or deceptive practices against Verizon fail as a matter of law.

### X.

We observe also that Plaintiffs have suffered no "legally cognizable injury." In their opening brief, Plaintiffs maintain that they have suffered economic injury because Plaintiffs would not have paid the Touch Calling fees but for Verizon's alleged misrepresentation regarding the necessity of paying the fee in exchange for Touch Calling service. (Citing *Zanakis–Pico v. Cutter Dodge, Inc.*, 98 Hawai'i 309, 317, 47 P.3d 1222, 1230 (2002)) (declaring that "[f]alse or misleading advertisements do their damage when they induce action that a consumer would not otherwise have undertaken").

Under the filed-rate doctrine however, Plaintiffs were bound to pay the Touch Calling fees in exchange for the service, irrespective of any statements Verizon may have made. Thus, Plaintiffs were not induced into paying the fees by Verizon's representations. Rather, Plaintiffs were obligated under the tariff to pay the fees inasmuch as they elected to receive the Touch Calling service. We therefore find that Plaintiffs suffered no "legally cognizable injury" because they paid the filed rate in exchange for the Touch Calling service, in complete accordance with the filed tariff. *See Guglielmo, supra; Marcus I*, 938 F.Supp. at 1172. Hence, Plaintiffs cannot prove the requisite injury for recovery under HRS § 480–2. *See* HRS § 480–13(b) (stating that consumers *injured* by unfair or deceptive acts or practices declared unlawful under § 480–2 may sue for damages or pursue proceedings to enjoin the unlawful practice). The only consequence that could arise from reliance on Verizon's representations would be to pay the Touch Calling fees authorized by the filed tariff, a consequence that does not amount to a legally recognized injury. Thus, Plaintiffs are unable to legally prove that they were likely to be damaged by Verizon's disclosures as required for recov-

ery under chapter 481A. *See* HRS § 481A–4 (1993) (stating that an injunction may be granted to a person likely to be damaged by a deceptive trade practice).

The instant case is distinguishable from *Stein*. In that case, the district court ruled that under the filed-rate doctrine the plaintiff did not suffer any injury from the defendant's alleged deceptive practice. *Stein*, 22 F.Supp.2d at 1214. That court concluded, however, that the plaintiff's claim for injunctive relief should not be dismissed because the consumer protection statute upon which the plaintiff's claim was based did not require that the plaintiff show he was aggrieved or that he suffered a loss. *Id.* at 1215. In contrast, here, Plaintiffs' claims are based on HRS §§ 480–2 *et seq.* and §§ 481A *et seq.*, statutes that require a showing of injury and a likelihood of injury, respectively. Plaintiffs cannot demonstrate injury or likelihood of injury because they received services in exchange for fees as authorized by the filed tariff. Thus, Plaintiffs' claims for damages and injunctive relief under HRS §§ 480–2 *et seq.* and §§ 481A *et seq.* are barred by the filed-rate doctrine.

### XI.

We must note, also, that Plaintiffs' claim for money damages is barred for an additional reason—an award of money damages would compromise the rate structure that was set forth in the tariff filed with the HPUC. We recognize that Plaintiffs' claims, on their face, do not challenge the rates Verizon charges for Touch Calling services. Plaintiffs directly attack neither the validity of charging the Touch Calling service fee nor the reasonableness of the fee itself. Nonetheless, an award of damages to Plaintiffs in this case would violate the filed-rate doctrine by "hav[ing] the effect of imposing [a] rate other than that reflected in the filed tariff." *Dreamscape*, 414 F.3d at 669.

An award of damages would effectively impose a lower rate for Touch Calling services than the filed Touch Calling rate because the damages would have the same effect as a refund of all or a portion of the Touch Calling fees. Plaintiffs have paid the Touch Calling fee and received the Touch

Calling services in accordance with Tariff No. 3. Subsequent payment of money to Plaintiffs with respect to the Touch Calling fee, whether in the form of a refund from Verizon or damages from a court for alleged misrepresentation by Verizon, would create a "retroactive rate change" that is barred by the filed-rate doctrine. *See id.* at 673. The doctrine instructs that deviation from a rate in a duly filed tariff "is not permitted upon any pretext." *Maxwell,* 237 U.S. at 97, 35 S.Ct. 494. Plaintiffs in fact concede that the doctrine bars suits that would have the effect of changing filed tariffs. Thus, an award of damages is prohibited as it would improperly grant Plaintiffs exemption from the provision in Tariff No. 3 that requires customers to pay the established Touch Calling fees in exchange for receipt of Touch Calling services.

## XII.

■ Plaintiffs are correct in asserting that "lawsuits asking the courts to interpret the filed rates, or to enforce the filed rates, are not barred by the filed rate doctrine." (Citing *Brown v. MCI Worldcom Network Servs. Inc.,* 277 F.3d 1166, 1171 (9th Cir.2002).) The instant case, however, is unlike *Brown.* In that case the Ninth Circuit held that the filed rate doctrine did not bar plaintiff's claims that MCI had improperly charged the plaintiff a $10 minimum monthly usage fee for phone lines that were not available to the plaintiff. *Id.* at 1171–72. In holding that the filed rate doctrine did not bar the plaintiff's claims, the Ninth Circuit stated that the plaintiff did not challenge the tariff's validity either directly or indirectly but was instead seeking to enforce the terms of the tariff which did not allow the usage fee to be assessed for phone lines the customer does not have. *Id.* In contrast, here, Plaintiffs are not seeking to enforce Verizon's tariffs as Tariff No. 3 specifically authorizes Verizon to charge the Touch Calling rate in exchange for the Touch Calling Services that Plaintiffs received.

Plaintiffs are also correct in asserting that the filed-rate doctrine does not necessarily pose a bar to claims that do not challenge the reasonableness of rates or practices in a filed tariff. (Citing *Spielholz v. Superior Ct.,* 86 Cal.App.4th 1366, 1374–76, 1381, 104 Cal. Rptr.2d 197 (2001)). As we noted, however, Plaintiffs' claims for damages do compromise Verizon's rate structure indirectly and Plaintiffs cannot prove that Verizon engaged in an unfair or deceptive practice regarding the Touch Calling fees because the filed-rate doctrine imputes knowledge to Plaintiffs that such fees were properly chargeable.

Contrary to Plaintiffs' suggestion, the instant case is also unlike *Qwest Corp. v. Kelly,* 204 Ariz. 25, 59 P.3d 789 (Ariz.Ct.App. 2002). In that case, the plaintiffs brought an action against Qwest, a corporation selling telephone service. *Id.* at 791–92. The plaintiffs alleged that Qwest engaged in fraudulent and deceptive practices and material misrepresentations of fact in selling a wire maintenance service that Qwest knew or should have known the plaintiffs (as residential tenants rather than homeowners) did not need. *Id.* at 801. The Arizona Court of Appeals in that case held that the filed-rate doctrine did not bar the plaintiffs' claims because the claims implicated "[n]either the antidiscrimination nor the nonjusticiability strand of the filed rate doctrine." *Id.* The instant case differs from *Qwest* because the plaintiffs in that case paid the filed rate but arguably did not receive a benefit or service in exchange for the payment inasmuch as they may not have needed the wire maintenance service for which they were charged. *Id.* In contrast, here, Plaintiffs do not allege they received no benefit in exchange for their payment to Verizon. Verizon acted in accordance with its tariff by providing the Touch Calling service to Plaintiffs in exchange for the Touch Calling fees.

Similarly, we find that Plaintiffs' reliance on several cases is misplaced. *Kellerman v. MCI Telecomms. Corp.,* 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045 (1986), did not involve a question of the applicability of the filed-rate doctrine but a question of whether state law claims were preempted by the federal Communications Act. *Cundiff v. GTE Cal.,* 101 Cal.App.4th 1395, 125 Cal.Rptr.2d 445 (2002), is unlike the instant case as there was no discussion in that case of whether the billing practice in question was disclosed in a tariff. *Bates* involved a question of whether the state law claims (including *inter alia* ˎ

defective manufacturing and breach of express warranty) that plaintiff farmers brought against defendant pesticide manufacturer were preempted in light of a federal statute governing pesticide labeling. *Bates,* 544 U.S. at ——, 125 S.Ct. at 1798. That case did not involve the filed-rate doctrine; indeed it did not involve a tariff of any kind.

### XIII.

Because we hold that Plaintiffs' claims are barred by the filed-rate doctrine, we need not and do not reach the primary jurisdiction issue. Therefore, the court's August 17, 2004 judgment is affirmed.